No. 73 December 26, 2014 577

IN THE SUPREME COURT OF THE
STATE OF OREGON

OREGON OCCUPATIONAL SAFETY
& HEALTH DIVISION,
*Petitioner on Review,*

*v.*

CBI SERVICES, INC.,
*Respondent on Review.*

(WCB 0900126SH; CA A147558; SC S061183)

En Banc

On review from the Court of Appeals.*

Argued and submitted November 4, 2013.

Rebecca M. Auten, Assistant Attorney General, argued the cause and filed the brief for petitioner on review. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Carl B. Carruth, McNair Law Firm, Columbia, South Carolina, argued the cause for respondent on review. Joel S. DeVore, Luvaas Cobb, Eugene, filed the brief for respondent on review.

LANDAU, J.

The decision of the Court of Appeals is affirmed on other grounds. The case is remanded to the Workers' Compensation Board for further proceedings.

_____
   * Judicial review from Workers' Compensation Board. 254 Or App 466, 295 P3d 660 (2013).

## LANDAU, J.

ORS 654.086(2) provides that an employer is not liable for a "serious" violation of the Oregon Safe Employment Act (OSEA) if "the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." At issue in this case is what the statute means when it says that an employer "could not with the exercise of reasonable diligence know" of a violation. The Court of Appeals held that the statutory phrase refers not to whether an employer "could" know—in the sense of being capable of knowing—of the violation; rather, the phrase refers to whether, taking into account a number of specified factors, an employer "should" know of the violation. *OR-OSHA v. CBI Services, Inc.*, 254 Or App 466, 295 P3d 660 (2013). For the reasons that follow, we conclude that the Court of Appeals erred in its construction of ORS 654.086(2), but we affirm on other grounds.

## I.  BACKGROUND

The relevant facts are not in dispute. Employer CBI Services, Inc., a contractor, performed work on a water treatment tank that was under construction. At that time, the tank consisted of a 32-foot-high wall that created a circular enclosure about 130 feet in diameter. It did not yet have a roof. Around the inside of the tank, there was a carpenter's scaffold, about four feet below the tank's top edge. The scaffold would prevent falls to the inside of the tank. There was, however, no such scaffolding on the outside of the tank.

An Oregon Occupational Safety and Health Division (OR-OSHA) safety compliance officer, Brink, conducted a safety inspection of the construction site. As he approached the water tank, he saw a worker sitting on its top rim. The worker, later identified as Crawford, was welding and did not appear to be using fall protection. Brink took several pictures. He then approached the site supervisor, Vorhof, who was working at ground level, inside the entrance to the tank, rigging anchor cables. Brink and Vorhof were about 65 feet from Crawford, who was visible from where they stood. Brink told Vorhof what he had seen. Vorhof looked up at Crawford, who was still sitting on the rim of the tank.

Crawford was not wearing a safety harness and lanyard. Vorhof told Crawford to get down.

While Brink was talking to Vorhof, he noticed a second worker, Bryan, also working without required fall protection. Bryan was operating a lift, several feet from the ground. He was wearing a harness with a lanyard, but he had not attached the lanyard to the lift. Bryan also was about 65 feet from where Vorhof was working. Brink pointed to Bryan and said to Vorhof, "Hey, that man is not tied off." Vorhof then asked Bryan whether he was tied off, at which point Bryan noticed that he had not secured the lanyard to the lift and quickly did so. Bryan had been on the lift without fall protection for about 10 minutes.

Brink later issued employer a citation and notification of penalty for two "items," that is, two serious safety violations. Item one cited employer for failing to ensure that Bryan used required personal fall protection while working on the lift, while item two cited employer for failing to ensure that Crawford used fall protection when working while exposed to a 32-foot fall hazard. Employer disciplined Crawford, Bryan, and Vorhof as a result of the citation.

At the time, employer had in place safety rules, precautions, and training mechanisms—including fall-protection training and mandatory worksite safety meetings. Employer's fall-protection rules required, among other things, the use of either protective scaffolding or a lanyard attached to a body harness whenever a worker was exposed to a fall hazard of six feet or more.

Employer requested a hearing before an administrative law judge (ALJ) with the Hearings Division of the Workers' Compensation Board. At the beginning of the hearing, employer moved to dismiss the citation on the ground that OR-OSHA had failed to carry its burden of proving, as part of its *prima facie* case, that employer knew of the alleged violations. Employer did not dispute that, under applicable rules, a supervisor's knowledge is imputed to an employer. It argued instead that OR-OSHA had failed to establish that its supervisor, Vorhof, had not been reasonably diligent in monitoring employees and enforcing safety rules. According to employer, OR-OSHA had mistakenly assumed that

Vorhof was under the obligation to keep constant watch over his workers. OR-OSHA responded that Vorhof was within 65 feet of the violations and had reasonable time to observe them.

The ALJ denied the motions to dismiss, explaining: "Employer argues that continuous observation of employees is neither required [n]or possible and that the conditions existed in such a short window of time that Vorhof did use reasonable diligence in supervising his crew. However, * * * I find that there was sufficient time for Vorhof to observe either or both of the workers subject to the citation."

At the hearing itself, employer contested Brink's observation that Crawford was sitting atop the water tank. It also argued that, in any event, it was excused from liability because any violations were a result of "unpreventable employee misconduct." OR-OSHA responded that Brink's testimony and the photographs that he took supported his report that Crawford was sitting on the tank. As for employer's affirmative defense, OR-OSHA argued that employer failed to meet its burden of establishing that it took reasonable steps to discover the violation.

The ALJ vacated item one of the citation and affirmed item two. Beginning with item one, pertaining to Bryan's use of the lift without adequate fall protection, the ALJ concluded that applicable rules did not require the use of fall protection at heights of less than six feet and that OR-OSHA had failed to prove how high the lift was at the time of the alleged violation. As for item two, pertaining to Crawford's failure to use fall protection when working atop the 32-foot tank wall, the ALJ found that, as Brink had testified, Crawford in fact was sitting on top of the water tank at the time of the violation. The ALJ further concluded that Vorhof could have known of the violation with the exercise of reasonable diligence, based on his proximity to Crawford and the duration of the violation. The ALJ further concluded that employer had failed to establish the affirmative defense of unpreventable employee misconduct, an element of which is that employer took reasonable steps to discover the violation. Apparently referring to his prior ruling on the motion to dismiss, the ALJ explained that he had "previously

determined [the] element of employer knowledge, the deter-
mination that [employer] did not exercise reasonable dili-
gence to detect the violation and established constructive
knowledge of the violation."

Employer sought judicial review in the Court of
Appeals of the part of the ALJ's order affirming citation item
two. Employer argued that the ALJ had used an incorrect
legal standard to determine whether OR-OSHA had met its
*prima facie* burden to prove employer knowledge and that
the ALJ misinterpreted and misapplied the elements of the
unpreventable employee misconduct affirmative defense.
OR-OSHA cross-petitioned for judicial review, challenging
the part of the ALJ's order vacating citation item one.

The Court of Appeals agreed with both parties and
reversed and remanded on both the petition and the cross-
petition for review.

On the petition, the Court of Appeals began its
analysis by stating that, under ORS 654.086(2), OR-OSHA
bore the burden of proving that employer knew or, with
the exercise of reasonable diligence, could have known of
Crawford's violation. *CBI Services, Inc.*, 254 Or App at 473-
74. The court noted the dearth of Oregon appellate court
case law addressing the question of what ORS 654.086(2)
requires, but observed that this court "has intimated that,
in deciding cases under the OSEA, we may look to fed-
eral case law for guidance." *Id*. at 474. Cited as authority
for that observation was this court's opinion in *OR-OSHA
v. Don Whitaker Logging, Inc.*, 329 Or 256, 263, 985 P2d
1272 (1999), which the Court of Appeals read to stand for
the proposition that federal law may serve as such guidance
whenever state law has a counterpart in federal statute. 254
Or at 474. With that principle in hand, the court concluded
that, because the operative wording of ORS 654.086(2) finds
an identical counterpart in the federal Occupational Safety
and Health Act (OSHA), 29 USC § 666(k),[1] it was appropri-

_____

[1] 29 USC § 666(k) provides,

"For purposes of this section, a serious violation exists in a place of employ-
ment if there is a substantial probability that death or serious physical harm
could result from a condition which exists, or from one or more practices,
means, methods, operations, or processes which have been adopted or are in

ate to turn to federal case law to determine what OR-OSHA was required to prove to make out a *prima facie* case of Vorhof's knowledge of Crawford's violation. *Id.* at 474-75.

The court noted that the body of federal case law that has developed in connection with the federal OSHA has identified a number of factors for assessing whether an employer knew or, with the exercise of reasonable diligence, could know of a violation. *Id.* at 477. Those factors include the foreseeability of the violations, the general circumstances and level of danger inherent in the work, the potential need for continuous supervision, the nature and extent of the supervisor's other duties, the supervised workers' training and experience, and the extent and efficacy of the employer's safety programs and precautions. *Id.* at 477-78, 481. The Court of Appeals reported that "most federal courts have determined—applying the same statutory language defining a serious violation set forth in ORS 654.086(2)—that the relevant inquiry in proving a serious violation is whether 'an employer knew or *should have* known of a hazardous condition.'" *Id.* at 478-79 (quoting *American Wrecking Corp v. Secretary of Labor*, 351 F3d 1254, 1264 (DC Cir 2003) (emphasis added by Court of Appeals). In other words, the OSEA essentially requires OR-OSHA to establish that an employer was "negligent" in failing to know of the violation. *Id.*

The court concluded that, "to the extent that federal case law dictates" such an approach to the issue of employer knowledge, "the ALJ's inquiry in this case was critically shortsighted." *Id.* at 479. In particular, the ALJ failed to consider that Crawford's violation "was entirely unforeseeable." *Id.* Moreover, the court added, "the ALJ failed to take into account employer's extensive safety protocols, including worksite-specific fall-protection planning," as well as "the evidence indicating that Vorhof had no reason to believe that Crawford was exposed to a potential fall hazard at all." *Id.* at 480.

Turning to the cross-petition, concerning the dismissal of item one based on OR-OSHA's failure to establish

use, in such place of employment *unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.*" (Emphasis added.)

that Bryan was working at a height covered by the fall-protection rules, the Court of Appeals concluded that the ALJ had erred. *Id.* at 485. In the court's view, the ALJ erroneously interpreted the applicable rules to include a height requirement. *Id.*

## II.  ANALYSIS

OR-OSHA petitioned for review in this court, arguing that the Court of Appeals erred when it held that, under ORS 654.086(2), the agency must prove that an employer knew or *should have known*, after considering a list of required factors, of a violation, rather than that the employer knew or *could have known* of the violation, based on whatever factors the agency considers relevant—in this case, time and proximity. Employer, for its part, asserts that OR-OSHA seeks an "unprecedented strict liability rule" that a *prima facie* case of employer knowledge may be made merely by establishing that a supervisor was on the job site during the occurrence of a serious violation that the supervisor could have seen if he had looked in the right direction at the right time. Employer argues that, under Oregon law and federal OSHA cases interpreting ORS 654.086(2)'s identical federal counterpart, the ALJ must consider the several factors that the Court of Appeals identified, besides mere proximity and time, in determining whether an employer knew or should have known of a serious violation. Employer does not challenge the portion of the Court of Appeals' decision reversing on the cross-petition. The sole issue before us, then, is whether the Court of Appeals correctly interpreted ORS 654.086(2) to require OR-OSHA to establish that employer knew or should have known of the violation, taking into account various factors identified in federal court case law.

## A.   *Controlling principles*

The parties' arguments about that issue present an issue of statutory construction, which we resolve by applying familiar principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We attempt to discern the meaning of the statute most likely intended by the legislature that enacted it, examining the

text in context, any relevant legislative history, and pertinent rules of interpretation. *Id.*

Determining the intended meaning of a statute ultimately is a question of law. *Bergerson v. Salem-Keizer School District*, 341 Or 401, 411, 144 P3d 918 (2006). But, depending on the nature of the statutory term at issue, an administrative agency's construction of a statute nevertheless may be entitled to a measure of deference. *See generally Springfield Education Assn v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980). Whether the agency's construction is entitled to such deference depends on whether the disputed term is exact, inexact, or delegative. *Id.*

Exact terms "impart relatively precise meanings," and "[t]heir applicability in any particular case depends upon agency factfinding." *Id.* at 223-24. Appellate courts review an agency's application of exact terms for substantial evidence. *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 354, 15 P3d 29 (2000). Inexact terms "express a complete legislative meaning but with less precision." *Bergerson*, 341 Or at 411. In such cases, the courts examine the meaning of the statute without deference to the agency's construction. *Blachana, LLC v. Bureau of Labor and Industries*, 354 Or 676, 687, 318 P3d 735 (2014) (agency's interpretation of nondelegative term "is not entitled to deference on review"); *Schleiss v. SAIF*, 354 Or 637, 642, 317 P3d 244 (2013) ("[T]he Director's construction of the [inexact] statutory term in his rule is not entitled to deference on review."). Delegative terms "express incomplete legislative meaning that the agency is authorized to complete." *Coast Security Mortgage Corp.*, 331 Or at 354. Examples include such terms as "good cause," "fair," "undue," "unreasonable," and "public convenience and necessity." *Springfield Education Assn*, 290 Or at 228. Appellate courts review an agency's interpretation of delegative terms to ensure that the interpretation is "within the range of discretion allowed by the more general policy of the statute." *Id.* at 229.

We begin our analysis of the statute with a brief bit of background to provide context. The Oregon legislature enacted the Oregon Safe Employment Act in 1973. Or Laws 1973, ch 833; *see generally* Keith Skelton, *Workmen's*

*Compensation in Oregon: Ten Years After*, 12 Willamette LJ 1, 6-7 (1975) (summarizing legislative history of OSEA). The Act was patterned after the federal OSHA, which the United States Congress enacted in 1970. Pub L 91-596 (1970). The purpose of the OSEA is "to assure as far as possible safe and healthful working conditions for every working man and woman in Oregon." ORS 654.003. To effectuate that purpose, the Act imposes on every employer the burden of "furnish[ing] employment and a place of employment which are safe and healthful for employees therein." ORS 654.010. At the same time, the Act requires that "[n]o employer shall construct or cause to be constructed or maintained any place of employment that is unsafe or detrimental to health." ORS 654.015.

The OSEA vests the director of the Department of Consumer and Business Services (DCBS) with the responsibility for enforcing the terms of the OSEA. ORS 654.025(1). It authorizes the director and the Workers' Compensation Board (which operates within the DCBS) to promulgate workplace safety rules to carry out the purposes of the Act. ORS 654.025(2); ORS 654.035. It also authorizes the director to cite an employer for violations of those rules and to impose civil penalties. ORS 654.031; ORS 654.086(1). The amount of the fine that the director may impose depends on whether the violation qualifies as "serious," whether the violation was willful or repeated, and whether the employer made any false statements in connection with the enforcement of the rules. ORS 654.086(1).

A "serious" violation occurs

"if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation."

ORS 654.086(2). The issue in this case is whether employer committed a "serious" violation within the meaning of that statute. There is no contention that Crawford's and Bryan's failures to use proper fall protection were not conditions or

practices with a substantial probability of resulting serious physical harm. Rather, as noted, the issue in contention is whether employer "did not, and could not within the exercise of reasonable diligence, know" of those violations.

An employer's supervisor's knowledge of an employee's violation is imputed to the employer itself. *OR-OSHA v. Don Whitaker Logging, Inc.*, 329 Or 256, 263, 985 P2d 1272 (1999); *see also former* OAR 437-001-0760(3)(c) (2009) (supervisors are agents of their employers in the discharge of their authorized duties); OAR 437-001-0015 (defining "[a]gent of the employer" as "[a]ny supervisor or person in charge or control of the work or place of employment including, but not limited to, any manager, superintendent, foreperson, or lead worker"). In this case, all parties agree that, if Vorhof had sufficient knowledge of the violation, employer also had the requisite knowledge.

OR-OSHA has the burden of proving a "denied violation" by a preponderance of the evidence. OAR 438-085-0820(1), (3).[2] As we have noted, the Court of Appeals stated in this case that OR-OSHA must prove employer knowledge as one of the elements of a denied violation. *CBI Services, Inc.*, 254 Or App at 474. OR-OSHA does not contest that statement regarding its burden; and employer affirmatively agrees with it. For the purposes of this opinion, we accept that as a given, as we have in at least one other case. *Don Whitaker Logging, Inc.*, 329 Or at 260. In doing so, however, we do not mean to suggest that we agree with the Court of Appeals and the parties in that regard. We express no opinion one way or the other on the matter.[3]

---

[2] OAR 438-085-0820 provides:

"(1) OR-OSHA has the burden of proving:

"(a) A denied violation;

"* * * * *

"(3) The party having the burden of proving a fact must establish it by a preponderance of the evidence."

[3] The statute does not say that OR-OSHA has to establish employer knowledge; rather, it says that an employer is liable for certain dangerous conditions "*unless* the employer *did not*, and *could not* with the exercise reasonable diligence, know of the presence of the violation." ORS 654.086(2) (emphasis added). It could be argued that the phrasing that follows the word "unless"—ordinarily a word of limitation—sets out an affirmative defense. The parties, however, have not briefed that issue, and we do not address it in this opinion.

B.   *Application: The meaning of ORS 654.086(2)*

We turn then to the meaning of the phrase, "unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." In particular, we focus on the meaning of the disputed part of that phrase—"could not with the exercise of reasonable diligence, know" of the violation. In construing that phrase, we pay careful attention to its wording. *State v. Vasquez Rubio*, 323 Or 275, 280, 917 P2d 494 (1996) ("To interpret a statute properly, this court must focus on the exact wording of the statute."). We do so because only that wording received the consideration and approval of a majority of the members of the Legislative Assembly. As this court explained in *State v. Gaines*, that formal adoption process produces "the best source from which to discern the legislature's intent, for it is not the intent of individual legislators that governs, but the intent of the legislature as formally enacted into law." 346 Or at 171.

The wording of the disputed phrase in ORS 654.086(2), on its face, states that an employer is not liable for a serious violation if the employer had exercised "reasonable diligence" and still "could not *** know" of the violation. Thus, there are two components of that phrase that require parsing—one referring to an employer's exercise of "reasonable diligence" and the other referring to what an employer exercising such reasonable diligence "could not *** know."

As earlier noted, in determining the meaning of each of those components, we must ascertain whether it is exact, inexact, or delegative in nature, so that we may apply the appropriate standard of review. Whether legislation is exact, inexact, or delegative is itself a question of statutory construction, requiring us to examine the text of the statute in its context. *J. R. Simplot Co. v. Dept. of Agriculture*, 340 Or 188, 197-98, 131 P3d 162 (2006). In engaging in that analysis, however, it is important to remember that a single statutory phrase may contain terms of more than one type. *See generally Salem Firefighters Local 314 v. PERB*, 300 Or 663, 668, 717 P2d 128 (1986) (rejecting argument that treated an entire statute as delegative without distinguishing its distinct components).

We begin with the phrase "could not \*\*\* know," as it is used in ORS 654.086(2), starting with a determination whether the phrase is exact, inexact, or delegative. In this case, we readily conclude that the phrase is inexact. It is not so precise as to require only factfinding. Nor is it an open-ended phrase that necessitates further administrative agency policy making. Accordingly, our task is to determine the intended meaning of the phrase, applying the ordinary tools of statutory construction.

As used in this context, the word "could" is the past tense of the word "can" and, as used in its auxiliary function, expresses the "past conditional." Webster's *Third New International Dictionary* 517 (unabridged ed 2002). The word "can," in turn, is defined as "to be able to do, make, or accomplish." *Id*. at 323. *See also The American Heritage Dictionary of the English Language* 416 (5th ed 2011) (defining "could" as "the past tense of can \*\*\* used to indicate ability or permission in the past"). In ordinary usage, it connotes capability, as opposed to obligation. The same is true in legal usage. *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 98 (1987) ("Generally *can* expresses physical ability <he can lift 500 pounds>.") (emphasis in original).

In the absence of evidence to the contrary, we assume that the legislature intended words of common usage to be given their ordinary meanings. *Ogle v. Nooth*, 355 Or 570, 578, 330 P3d 572 (2014). Nothing in the context of ORS 654.086(2) indicates that the legislature intended that the disputed phrase have a meaning different from what the ordinary meaning of its terms suggests. Nor are we aware of anything in the legislative history of the statute to the contrary. We therefore conclude that ORS 654.086(2) requires evidence about whether an employer knew of a violation or, with the exercise of reasonable diligence, could know—in the sense of being capable of knowing—of the violation.

We turn, then, to the phrase "reasonable diligence." It is not an exact term; it lacks a meaning so precise as to require only factfinding. The more difficult question is whether it is inexact or delegative. This court's prior cases have described delegative terms as those that "express incomplete legislative meaning that the agency is authorized to

complete," *Coast Security Mortgage Corp.*, 331 Or at 354. In evaluating whether a given statutory term expresses such incomplete legislative meaning, the court has taken several considerations into account.

First, the court often has compared a disputed term to those the court already has concluded are delegative in nature. *See, e.g.*, *Bergerson*, 341 Or at 413 (concluding that "unreasonable" is a delegative term because, among other things, it "is among the examples of delegative terms this court has noted previously"); *V. L. Y. v. Board of Parole*, 338 Or 44, 53, 106 P3d 145 (2005) (concluding that a disputed term was "not like the terms that we have identified as delegative in the past"). Second, the court has asked whether the disputed term is defined by statute or instead is readily susceptible to multiple interpretations. *See, e.g.*, *Bergerson*, 341 Or at 412-13 (concluding that "unreasonable" and "clearly *** excessive remedy" are delegative because the relevant statute "defines neither term, and both are open to multiple interpretations" (citing *Coast Security Mortgage Corp.*, 331 Or at 354)). Third, the court has inquired whether the term in contention requires the agency to engage in policy determination or make value judgments, as opposed to interpreting the meaning of the statute. *See, e.g.*, *McPherson v. Employment Division*, 285 Or 541, 549-50, 591 P2d 1381 (1979) (concluding that "good cause" is a delegative term because it "calls for completing a value judgment that the legislature itself has only indicated"). Fourth and finally, the court has looked to the larger context of the statute in dispute, to determine whether other provisions suggest that the legislature did or did not intend a term to be regarded as delegative. *See, e.g.*, *J. R. Simplot Co.*, 340 Or at 197 (concluding that "reasonably necessary" is not delegative given additional, qualifying statutory wording).

With those considerations in mind, we turn to the phrase "reasonable diligence" as it is used in ORS 654.086(2). On its face, the term is very similar to the sort of terms that the court has regarded as delegative in prior cases. In fact, the term "unreasonable" was one that the court listed as an example of delegative terms in *Springfield Education Assn.* 290 Or at 228. The term is not defined elsewhere in the OSEA, and, as the parties' arguments demonstrate, it is

readily susceptible to multiple interpretations. "Reasonable diligence" does not just call for OR-OSHA to engage in interpretation; rather, it calls for the agency to engage in value judgment about what is "reasonable" and what is "diligence" under the circumstances of each case. Finally, there is nothing in the larger of context of the statute that suggests that the legislature intended the term to be regarded as something other than delegative in nature.

To recap, then: ORS 654.086(2) provides that an employer is liable for a serious violation of the OSEA and its implementing rules unless the employer "did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." That means that an employer is not liable for a serious violation if the employer had exercised "reasonable diligence" and still "could not *** know" of the violation. In reviewing an agency's decision about whether an employer is excused from liability under ORS 654.086(2), there are two components, each of which triggers a different standard of review. First, as a matter of law, the reference in the statute to whether an employer "could not *** know" of a violation refers to what an employer was capable of knowing under the circumstances. Second, we will defer to OR-OSHA's determination about what constitutes "reasonable diligence" under the circumstances of each case as long as the agency's determination "remains within the range of discretion allowed by the general policy of the statute." *Springfield Education Assn.*, 290 Or at 229.

As we have noted, the Court of Appeals concluded that federal case law construing the federal-law counterpart of ORS 654.086(2) years after enactment of the state statute "dictates" a different reading of that law. Specifically, the court concluded that, in accordance with those federal cases, ORS 654.086(2) requires OR-OSHA, as a matter of law, to consider a list of particular factors in determining whether an employer "should" have known of a violation. The court predicated its conclusion that those federal cases are controlling on its reading of this court's decision in *Don Whitaker Logging, Inc.*

In *Don Whitaker Logging, Inc.*, the issue was whether, under an administrative rule adopted to implement

the OSEA, proof of a supervisor's safety violation established the employer's knowledge of the violation. 329 Or at 258. In resolving the question, the Court of Appeals had relied on federal cases interpreting rules adopted pursuant to the federal OSHA. This court concluded that the Court of Appeals erred in relying on those federal cases. *Id.* at 263. Among other things, the court observed that the administrative rule at issue was "unique to Oregon and ha[d] no counterpart in the federal OSHA." *Id.*

The Court of Appeals in this case read that observation as implicitly holding that, if an Oregon rule *does* have a counterpart in federal law, later federal court cases interpreting that law become authoritative. In so doing, the court erred for at least two reasons. First, to draw that general principle from the court's observation is logically fallacious.[4] Second, to the extent that the court's statement in *Don Whitaker Logging, Inc.*, could be taken to suggest the appropriateness of resorting to *some* federal case law when an Oregon statute finds a federal counterpart, it does not go so far as to support the notion that federal case law issued *after* the enactment of the Oregon statute is authoritative. In fact, the law is to the contrary.

Basic principles of Oregon statutory construction require that we focus on the meaning of the statute most likely intended by the legislature that adopted it. *State v. Perry*, 336 Or 49, 52, 77 P3d 313 (2003) (proper focus of Oregon statutory construction is the discernment of "the intent of the legislature that passed [the] statute"). That means that we attempt to determine what the legislature actually intended *at the time of enactment*. As this court explained in *Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995), "[t]he proper inquiry focuses on what the legislature intended at the time of enactment and discounts later events."

---

[4] To be precise, it suffers from the fallacy of the denying the antecedent. To say, "if Oregon law has no federal counterpart, then federal law does not control" (if not P, then not Q) does not necessarily mean that, "if Oregon law does have a federal counterpart, then federal law does control" (if P, then Q). For example, to say if it does not rain, then there will be no crop harvest, does not necessarily mean that if it does rain, then there will be a crop harvest, because the existence of a harvest could depend on any number of other factors than rain. Locusts, perhaps.

That, for example, is why this court looks to dictionaries that are contemporaneous with the time of enactment when determining the ordinary meaning of a statutory word or phrase. *See, e.g.*, *State v. Glushko/Little*, 351 Or 297, 312, 266 P3d 50 (2011) (rejecting use of modern dictionary definitions to interpret statute enacted in 1864); *Perry*, 336 Or at 53 ("In interpreting the words of a statute enacted many years ago, we may seek guidance from dictionaries that were in use at that time.").

The same reasoning applies to the use of case law. Court decisions that existed at the time that the legislature enacted a statute—and that, as a result, it could have been aware of—may be consulted in determining what the legislature intended in enacting the law as part of the context for the legislature's decision. *See, e.g.*, *Comcast of Oregon II, Inc. v. City of Eugene*, 346 Or 238, 254, 209 P3d 800 (2009) ("[W]e must be mindful of *** settled law as part of our analysis of statutory context."). That is so especially as to case law interpreting the wording of a statute borrowed from another jurisdiction. *See, e.g.*, *Lindell v. Kalugin*, 353 Or 338, 355, 297 P3d 1266 (2013) ("As a general rule, when the Oregon legislature borrows wording from a statute originating in another jurisdiction, there is a presumption that the legislature borrowed controlling case law interpreting the statute along with it."); *Jones v. General Motors Corp.*, 325 Or 404, 418, 939 P2d 608 (1997) ("If the Oregon legislature adopts a statute or rule from another jurisdiction's legislation, we assume that the Oregon legislature also intended to adopt the construction of the legislation that the highest court of the other jurisdiction had rendered before adoption of the legislation in Oregon.").

Case law published after enactment—of which the legislature could not have been aware—is another matter. That is not to say that later-decided federal cases cannot be persuasive. Decisions from other jurisdictions may carry weight, based on the force of the reasoning and analysis that supports them. *See, e.g.*, *State v. Walker*, 356 Or 4, 24, 333 P3d 316 (2014) (post-enactment cases from other jurisdictions "still may be consulted for their persuasive value"). But the fact that they involve similarly worded statutes, by itself, does not make those decisions controlling.

At issue in this case is the meaning of statutory wording that the Oregon legislature borrowed from federal law. The United States Congress enacted the federal OSHA in 1970. Pub L 91-596, § 17, 84 Stat 1590 (1970). Included in that legislation was, as we have described, what is now codified at 29 USC § 666(k). In 1973, the Oregon legislature adopted the OSEA, one section of which—now codified at ORS 654.086(2)—was patterned after the federal law. Or Laws 1973, ch 833, § 21. The issue, then, is what the Oregon legislature intended when it enacted that section at that time, and any controlling federal case law that existed at that time certainly would be relevant to making that determination.

In this case, the Court of Appeals principally relied on two unpublished federal cases, both of which were decided in the last few years. *CBI Services, Inc.*, 254 Or App at 477 (discussing *Public Utilities Maintenance, Inc. v. Secretary of Labor*, 417 Fed Appx 58 (2d Cir 2011), and *Kokosing Constr. Co. v. Occupational Safety & Hazard Review Com'n*, 232 Fed Appx 510 (6th Cir 2007)). The court also cited a number of other federal court cases, a few of which were decided in the early 1980s. 254 Or App at 478-79 (citing cases). The court cited one federal court case decided in 1975. *Id.* at 480 (citing *Brennan v. Butler Lime And Cement Company*, 520 F2d 1011 (7th Cir 1975)).

None of those cases was decided before the Oregon legislature enacted what is now ORS 654.086(2). Consequently, none of them sheds light on what the legislature had in mind when it adopted that statute in 1973.

Still, the cases on which the Court of Appeals relied could be persuasive, depending on the force of their own reasoning. The Court of Appeals relied on post-enactment federal cases for its conclusions that "reasonable diligence" within the meaning of ORS 654.086(2) requires, as a matter of statutory interpretation, an evaluation of a number of factors, particularly foreseeability, and that, as a result, the statute essentially requires proof that an employer *should* have known of the OSEA violation. *CBI Services, Inc.*, 254 Or App at 476-79.

As to the first point—whether "reasonable diligence" requires consideration of specific factors—in each of the cases on which the Court of Appeals relied, the federal courts reviewed factors that a federal agency had adopted pursuant to the federal OSHA. *See, e.g., Public Utilities Maintenance, Inc.*, 417 Fed Appx at 63 ("OSHRC [the Occupational Safety and Health Review Commission] has previously indicated that 'reasonable diligence' for the purposes of constructive knowledge involves" a number of factors.); *Kokosing Construction Co.*, 232 Fed Appx at 512 ("'Reasonable diligence involves several factors \*\*\*,'" quoting agency order).

Under federal law, review of an agency's interpretation of a statute is subject to a deferential standard of review. That is, the court does not determine what the statute means; rather, it determines whether the agency's interpretation of the statute is reasonable. *See generally Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 US 837, 842-44, 104 S Ct 2778, 81 L Ed 2d 694 (1984). In this case, however, the Court of Appeals did not review a state agency's interpretation for reasonableness. It concluded that ORS 654.086(2), as a matter of law, requires OR-OSHA to take into account the factors that the court listed. The cases on which it relied do not stand for that proposition of law. At most, they suggest that, *if* an agency considered such factors, that would be consistent with the controlling statute, which is an entirely different matter.

As to the second point—whether the statutory reference to whether an employer "could" know of a violation really means whether the employer "should" know—in each of the cases on which the Court of Appeals relied, the federal court used that phrasing without any explanation or analysis. In *American Wrecking Corp. v. Secretary of Labor*, 351 F3d 1254, 1264 (DC Cir 2003), for example, the court stated that "[t]he Secretary must always demonstrate that an employer knew or should have known of a hazardous condition to prove both 'serious' and 'willful' violations." The court did not explain that phrasing. Interestingly, it followed the statement with a citation to a published order of the Occupational Safety and Health Review Commission, *Conie*

*Constr., Inc.*, 16 BNA OSHC 1870, \*1 (No. 92-0264, 1994), which stated that the federal OSHA requires proof that the employer "knew, or, with the exercise of reasonable diligence *could* have known of the violative condition." (Emphasis added.) At best, such cases illustrate that there is a certain looseness with which courts may use terms like "could" and "should." We conclude that the federal case law on which the Court of Appeals relied does not justify departing from the wording of ORS 654.086(2) by reading the statute to require proof of what an employer "should" have known with the exercise of reasonable diligence.

Employer insists that the Court of Appeals correctly construed ORS 654.086(2). In employer's view, "federal OSHA law back to its inception" has treated the word "could" in 29 USC 666(k) to mean "should" in light of various factors and that nothing in the wording or the history of ORS 654.086(2) suggests that the Oregon legislature intended to depart from that understanding. The earliest case that employer cites in support of that proposition, however, is *Jerry Botchlet Masonry Constr. Co.*, 5 BNA OSHC 1506, 1507 (No 13-135, 1977) (evidence was insufficient to support a finding that the foreman "should have known of the [hazardous] condition"). That case was decided well after the adoption of ORS 654.086(2).

Employer also claims support for its position from Oregon tort cases in which this court held that, to prove constructive knowledge of an undiscovered hazard, a plaintiff must show that the defendant should have discovered it with the exercise of reasonable diligence. *See*, *e.g.*, *Diller v. Safeway Stores, Inc.*, 274 Or 735, 738, 548 P2d 1304 (1976); *Cowden v. Earley*, 214 Or 384, 387, 327 P2d 1109 (1958). Even assuming that employer's characterization of this state's case law is accurate, the fact remains that the legislature, in adopting ORS 654.086(2), used phrasing different from this court's decisions involving tort liability. Ordinarily, such differences in phrasing are taken to signify differences in intended meaning. *See, e.g., [Dept. of Transportation v. Stallcup](#)*, 341 Or 93, 101, 138 P3d 9 (2006) (differences in statutory phrasing suggests differences in meaning). Moreover, employer cites nothing in the legislative history that suggests that the legislature intended to

adopt the standard for constructive liability in tort cases, and we are aware of nothing, either.

Employer further contends that the Court of Appeals' decision is supported by the "black-letter principle" that both the federal OSHA and the OSEA are fault-based. In employer's view, permitting liability to rest on the mere capability of an employer to be aware of serious violations implicitly requires employers to "provide one-on-one constant supervision of each and every employee to assure that some fleeting violation which 'could' be discovered, if the supervisor happened to be looking at that precise time [,] was discovered."

Employer again is accurate enough in describing the federal OSHA and the OSEA as "fault-based." This court recognized that much in *Don Whitaker Logging, Inc.*, 329 Or at 263 ("OSHA is a fault-based system."). Employer's conclusion, however, does not follow from that premise. Under our construction of ORS 654.086(2), the statute remains fault-based. Employers are not liable based solely on the fact of a violation. If they did not know of the violation, and if they could not have known of that violation with the exercise of reasonable diligence, they are excused from liability. Moreover, an employer remains free to offer relevant evidence that, in the particular circumstances, it should not be held responsible for the employees' safety violations, such as, for example, that the employer took reasonable steps to discover the violations, or that the employee misconduct was unpreventable.

C.  *Application: The ALJ's order*

It remains for us to apply our understanding of ORS 654.086(2) to the final order at issue in this case. The ALJ determined that "there was sufficient time for Vorhof to observe either or both the workers subject to the citations and that constructive knowledge was established." In reaching that conclusion, the ALJ correctly quoted from the statute and appears to have correctly construed whether employer "could not *** know" to refer to what employer was capable of knowing or discovering. What is not clear is how the ALJ interpreted or applied the "reasonable diligence" element.

As earlier noted, the term "reasonable diligence" in ORS 654.086(2) is delegative in nature. That means that we ordinarily review an agency's interpretation and application of the term to determine whether they comport with the range of discretion afforded the agency under the law. *Springfield Education Assn.*, 290 Or at 229. That may be accomplished by administrative rule or by adequate explanation in a final agency order following adjudication. *See Salem Firefighters Local 314*, 300 Or at 667-68 (Although "[d]elegated policy most obviously occurs when the terms of a statute *** authorize and direct the adoption of regulations, *** statutory terms often leave important value judgments for direct application without prior specification by rules."). In this case, however, neither has occurred. The term has not been fleshed out by administrative rule. Nor does the ALJ's order explain how he arrived at the conclusion that employer could have known of Crawford's violation had it exercised reasonable diligence.

In that regard, this case parallels what happened in *McPherson*. In that case, an Employment Division referee denied unemployment compensation benefits on the ground that the petitioner had left work without "good cause." *McPherson*, 285 Or at 543. The referee based that determination on a Court of Appeals opinion that this court concluded was erroneous, because it failed to take into account the delegative nature of the good-cause standard. *Id.* at 555. Because the referee had failed to consider the issue of good cause in the proper light of the delegation provided by the legislature, the court explained, it could not tell what criteria might be developed in the absence of that misconception. *Id.*

In this case, somewhat similarly, the ALJ appears to have made his decision unaware of the delegative nature of the statutory standard of "reasonable diligence." As we have noted, the ALJ simply observed that "there was sufficient time for Vorhof to observe either or both of the workers subject to the citations and that constructive knowledge was established." The ALJ thus appears to have assumed that, given the Vorhof's physical proximity to the violations, it was possible for him to have observed them, and that that is enough to establish constructive knowledge under ORS

654.086(2). That it was possible for Vorhof to have viewed the violations, however, is only half of the statutory equation. ORS 654.086(2) provides that the possibility of discovering the violation must be evaluated in the context of "reasonable diligence." The ALJ's order in this case lacks any explanation supporting a determination as to employer's reasonable diligence.

For us to review an agency's decision for consistency with the discretion delegated to the agency by law, it must be evident that the agency exercised that discretion in the first place. *Cf., State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987) (failure to make a record that reflects an exercise of discretion held reversible error). In exercising that discretion under ORS 654.086(2), any or all of the factors that the Court of Appeals mentioned—the foreseeability of the violations, the general circumstances and level of danger inherent in the work, the potential need for continuous supervision, the nature and extent of the supervisor's other duties, the supervised workers' training and experience, and the extent and efficacy of the employer's safety programs and precautions—may well aid in explaining how "reasonable diligence" factors into a determination of an employer's constructive knowledge. But the question of which, if any, of those factors matters is one that the legislature has delegated in the first instance to the agency. At all events, there must be some sort of explanation that enables a reviewing court to evaluate whether a decision comports with the authority granted under the law.

The decision of the Court of Appeals is affirmed on other grounds. The case is remanded to the Workers' Compensation Board for further proceedings.