Argued and submitted January 10, affirmed April 27, petition for review denied September 16, 2022 (370 Or 214)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KAREN EVE DONALDSON,
*Defendant-Appellant.*

Coos County Circuit Court
20VI11870; A174173

510 P3d 943

Defendant appeals a judgment of conviction for failure to yield to an emergency vehicle, ORS 811.145. That conviction arose from defendant's failure to timely yield to an officer attempting to stop her for violating the posted speed limit. Defendant argues that the trial court erred by convicting her of that offense, because the officer intended to stop her and never intended to pass her, and the requirement under ORS 811.145 that motorists yield to an approaching emergency vehicle applies to motorists whom the emergency vehicle intends to pass but does not apply to motorists whom the emergency vehicle intends to stop. *Held*: The Court of Appeal construed ORS 811.145 and concluded that, regardless of an emergency vehicle operator's intention to either pass or not pass, when an emergency vehicle is approaching, ORS 811.145 requires motorists to perform all of the actions listed in paragraphs (1)(a) to (c), including yielding, immediately driving to the right-hand edge of the road, and stopping and remaining in such position until the emergency vehicle has passed or, for example, goes elsewhere; thus, failing to do any one of those actions alone would be sufficient to constitute a "failure to yield" under ORS 811.145.

Affirmed.

Brett A. Pruess, Judge.

Jason E. Thompson argued the cause for appellant. Also on the brief was Thompson Law, LLC.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Armstrong, Senior Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Defendant appeals a judgment of conviction for, among other offenses, failure to yield to an emergency vehicle, ORS 811.145.[1] That conviction arose from defendant's failure to timely yield to an officer attempting to stop her for violating the posted speed limit. Defendant argues that the trial court erred by convicting her of that offense because the officer intended to stop her and never intended to pass her, and that the requirement under ORS 811.145 that motorists yield to an approaching emergency vehicle applies to motorists whom the emergency vehicle intends to pass but does not apply to motorists whom the emergency vehicle intends to stop. The state responds that the focus of the statute relates to what a motorist must do, pursuant to ORS 811.145(1), when an emergency vehicle approaches, and not to whether the driver of an approaching emergency vehicle intends to stop or pass the motorist.

For the reasons explained below, we conclude that the trial court did not err, and we affirm.

## BACKGROUND

On January 28, 2020, Oregon State Police Trooper Jarrell was on patrol, traveling southbound on Highway 101 near mile post 253 1/2. Jarell observed defendant's vehicle, which was "traveling northbound, at what appeared to be a high rate of speed." Jarrell's radar indicated the vehicle speed to be 77 miles per hour in the posted 55 mile-per-hour zone. Jarrell turned around his patrol vehicle, caught up to defendant's car near milepost 252 1/2, and activated his emergency lights "in an attempt to get [defendant's] vehicle to stop."

---

[1] ORS 811.145 provides, in part:

"(1) A person commits the offense of failure to yield to an emergency vehicle or ambulance if an ambulance or emergency vehicle that is using a visual or audible signal in a manner described under ORS 820.300 and 820.320 approaches the vehicle the person is operating and the person does not do all of the following:

"(a) Yield the right of way to the ambulance or emergency vehicle.

"(b) Immediately drive to a position as near as possible and parallel to the right-hand edge or curb of the roadway clear of any intersection.

"(c) Stop and remain in such position until the emergency vehicle or ambulance has passed."

Defendant's vehicle continued to travel northbound at approximately 60 miles per hour, going past "multiple safe locations to pull over." Defendant then "went by another safe location that she could have pulled over" and passed a semitruck that "began to slow and drove onto the right-hand shoulder as if it was trying to yield" to Jarrell. Jarrell, too, passed the semitruck and then activated his siren. At that point, defendant activated her right turn signal but continued driving until about milepost 251, where she eventually stopped. Jarrell conducted a traffic stop and issued a citation to defendant for, among other offenses, failure to yield to an emergency vehicle, ORS 811.145.

At a subsequent trial, defendant argued that ORS 811.145 did not apply in her circumstances:

"Your Honor, the citation issued to me charges me for violating ORS 811.145, failure to [yield] to an emergency vehicle. Part (1)(c) of the failure to [yield] to an emergency vehicle requires me to stop and remain in such a position until the emergency vehicle has passed.

"* * * * *

"Since pulling me over obviously does not require the officer, as an emergency vehicle, to pass me, the rule does not apply to me * * *.

"* * * * *

"[T]here is no possible way that I could have complied with it because [Jarrell] was never going to pass me."

The trial court was unpersuaded by defendant's argument and explained why it was finding defendant in violation of ORS 811.145:

"[R]egarding the failure to yield to an emergency vehicle, I'm going to find you guilty of that * * *. In order to not be guilty, you would have to comply with [ORS 811.145(1)](a), (b), and (c), and you did not comply with (a) in a timely manner. You did not comply by immediately driving to a position [and] remain[ing] in such a position until the vehicle passed or until the officer directs you otherwise[;] you eventually stopped and remained in position, but it wasn't immediately driv[ing] into position as near as possible parallel to the right-hand edge of the curb, so I'm finding you guilty of that."

On appeal, defendant contends that the trial court erred in convicting her, because Jarrell "was in the process of 'stopping' defendant for speeding" and "never intended to 'pass'" her, and that ORS 811.145 does not apply when an officer intends to stop the driver rather than passing—that is, that ORS 811.145 "does not apply to motorists [who] are the 'target' of a stop by law enforcement." In support of that contention, defendant relies almost exclusively on case law from Washington, Georgia, and Alabama involving statutes worded similarly to ORS 811.145.[2] Based on that case law, defendant urges us to conclude that ORS 811.145 is inapplicable to drivers who are in the process of being stopped by law enforcement.

The state responds that the trial court did not err, because ORS 811.145 "does not require proof that the driver of the emergency vehicle intended to pass the person," nor does it "contain any exception for a police officer whose intent is to stop the vehicle it approaches."

## ANALYSIS

As framed by the parties' arguments, the dispute in this case concerns the scope of ORS 811.145—specifically, whether that statute applies to motorists who are being stopped by law enforcement.

The proper meaning and application of ORS 811.145 is a matter of statutory construction, and we review for legal error. *See State v. Pohle*, 317 Or App 76, 81, 505 P3d 475 (2022). To construe a statute, we "examine its text and context, as well as any relevant legislative history," *id.*, with "the paramount goal of discerning the legislature's intent," *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009).

The text of ORS 811.145 provides, in relevant part:

"(1)  A person commits the offense of failure to yield to an emergency vehicle or ambulance if an ambulance or emergency vehicle that is using a visual or audible signal in a manner described under ORS 820.300 and 820.320

---

[2] Defendant points to *State v. Weaver*, 161 Wash App 58, 248 P3d 1116 (2011) (involving RCW 46.61.210); *Jackson v. State*, 223 Ga App 27, 477 SE 2d 28 (1996) (involving OCGA § 40-6-74); and *McFerrin v. State*, 339 So 2d 127 (1976) (involving "Title 36, Section 19 and 20, Code of Alabama 1940, Recompiled 1958").

approaches the vehicle the person is operating and the person does not do all of the following:

"(a)   Yield the right of way to the ambulance or emergency vehicle.

"(b)   Immediately drive to a position as near as possible and parallel to the right-hand edge or curb of the roadway clear of any intersection.

"(c)   Stop and remain in such position until the emergency vehicle or ambulance has passed."

That text refers to an "emergency vehicle." As relevant here, the Vehicle Code defines "emergency vehicle" to include "a vehicle that is equipped with lights and sirens" and is "[o]perated by public police." ORS 801.260(1).

The text also refers to an emergency vehicle using visual or audible signals "in a manner described in ORS 820.300 and 820.320." Briefly, ORS 820.300 describes privileges and exemptions from specific traffic rules for drivers of emergency vehicles,[3] and ORS 820.320 describes the circumstances in which an emergency vehicle driver may (and may not) exercise those privileges.[4]

---

[3] ORS 820.300 provides, in part:

"(1) Subject to conditions, limitations, prohibitions and penalties established for emergency vehicle and ambulance drivers under ORS 820.320, the driver of an emergency vehicle or ambulance may do any of the following:

"(a) Park or stand in disregard of a statute, regulation or ordinance prohibiting that parking or standing.

"(b) Proceed past a red signal or stop sign.

"(c) Exceed the designated speed limits.

"(d) Disregard regulations governing direction of movement or turning in specified directions.

"(e) Proceed past the flashing bus safety lights without violating ORS 811.155 if the driver first stops the vehicle and then proceeds only when the driver:

"(A) Determines that no passengers of the bus remain on the roadway; and

"(B) Proceeds with caution."

[4] ORS 820.320 provides, in part:

"(1) A person commits the offense of illegal operation of an emergency vehicle or ambulance if the person is the driver of an emergency vehicle or ambulance and the person violates any of the following:

"(a) The driver of an emergency vehicle or ambulance may only exercise privileges granted under ORS 820.300 when responding to an emergency

The text of ORS 811.145 further provides that a vehicle operator must do certain acts when an emergency vehicle "approaches" in the specified manner. The term "approach" is not defined by statute but ordinarily means "to come or go near or nearer to in place or time," "draw nearer to," or "advances or maneuvers toward." *Webster's Third New Int'l Dictionary* 106 (unabridged ed 2002). Thus, a person's obligation to do certain acts under ORS 811.145 begins when an emergency vehicle using visual or audible signals is drawing nearer to or advancing or maneuvering toward that person.

Additionally, the text of ORS 811.145 indicates that, when a person operating a vehicle is approached by an emergency vehicle in the specified manner, that person commits

call or when responding to, but not upon returning from, an emergency. The driver of an emergency vehicle may exercise privileges granted under ORS 820.300 when in pursuit of an actual or suspected violator of the law.

"(b) The driver of an emergency vehicle or ambulance must use a visual signal with appropriate warning lights when the driver is exercising privileges granted under ORS 820.300.

"(c) In addition to any required visual signal, the driver of an emergency vehicle or ambulance must make use of an audible signal meeting the requirements under ORS 820.370 when the driver is proceeding past a stop light or stop sign under privileges granted by ORS 820.300 (1)(b).

"(d) A driver of an emergency vehicle or ambulance who is exercising privileges granted under ORS 820.300 by parking or standing an emergency vehicle in disregard of a regulation or ordinance prohibiting that parking, stopping or standing, shall not use the audible signal.

"(e) In exercising the privileges under ORS 820.300 (1)(e) relating to buses and bus safety lights, the driver of an emergency vehicle or ambulance must first stop the vehicle and then must:

"(A) Determine that no passengers of the bus remain on the roadway; and

"(B) Proceed with caution.

"(f) In proceeding past any stop light or stop sign under the privileges granted by ORS 820.300, the driver of an emergency vehicle or ambulance must slow down as may be necessary for safe operation.

"(g) The driver of an emergency vehicle or ambulance must not exceed any designated speed limit to an extent which endangers persons or property.

"(2) The driver of an emergency vehicle that is operated as an emergency police vehicle is not required to use either visual signal or the audible signal as described in this section in order to exercise the privileges granted in ORS 820.300 when it reasonably appears to the driver that the use of either or both would prevent or hamper the apprehension or detection of a violator of a statute, ordinance or regulation."

the offense of failure to yield if they fail to "do *all* of" the actions provided in paragraphs (1)(a), (b), and (c)—*viz.*, yield the right of away, immediately drive to the right side of the road, and stop there until the emergency vehicle passes. Use of the term "all" indicates that, if a person fails to do even *one* of the actions in paragraphs (1)(a) to (c), that is sufficient to constitute the offense of "failure to yield" as provided in ORS 811.145.[5]

In sum, the text of ORS 811.145 indicates that, if an emergency vehicle—for example, a police vehicle—using visual or audible signals in the specified manner is drawing nearer to (or advancing or maneuvering toward) a person operating a vehicle, a person is obligated to do *all* of the actions in paragraphs (1)(a) to (c), and, if that person fails to do even one of those actions, that is sufficient to constitute the person's violation of ORS 811.145. By corollary, a motorist's obligation to perform the actions in paragraphs (1)(a) to (c) ends once the emergency vehicle has ceased approaching in the specified manner because, for example, it is has gone elsewhere or has passed.

We next turn to the context of ORS 811.145. A statute's context includes "other provisions of the same statute and other related statutes." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

As noted above, ORS 811.145 explicitly refers to ORS 820.320, which describes the circumstances in which the driver of an emergency vehicle may (and may not) exercise specified privileges. One such circumstance that is particularly relevant here is described in ORS 820.320(1)(a). That provision states, in part:

> "The driver of an emergency vehicle may exercise privileges granted under ORS 820.300 *when in pursuit of an actual or suspected violator of the law*."

---

[5] Although the term "yield" is not defined in the Vehicle Code, relevant dictionary definitions of that term include "to give up possession of upon claim or demand," "change one's course in deference," *Webster's Third New Int'l Dictionary* 2652 (unabridged ed 2002), and "give right of way to *** other traffic," *The New Shorter Oxford English Dictionary* 3749 (ed 1993). We understand that term to encompass all of the actions in paragraphs (1)(a) to (c), in that, failing to do any one of those actions would be alone sufficient to constitute a failure to "yield" under ORS 811.145.

(Emphasis added.) That provision indicates the legislature's contemplation that one circumstance in which a person must yield to an emergency vehicle pursuant to ORS 811.145 is when that person is approached by a police vehicle using visual or audible signals "in pursuit of an actual or suspected violator of the law." But nothing in that provision suggests that a person's duty to yield in that circumstance is nullified when the person approached by the police vehicle is, themself, the person being pursued.

Additionally, unlike ORS 811.145, other provisions in ORS chapter 811 contain explicit exceptions for certain kinds of motorists. *See, e.g.*, ORS 811.215(7) (safety-belt requirement "does not apply to * * * [a]ny person who is driving a vehicle while on a newspaper or mail route"); ORS 811.260(11) (provisions requiring stops at flashing red lights "do not apply to * * * [a] person operating a bicycle"); ORS 811.425(2) (requirement that slow driver yield to overtaking vehicle "does not apply to the driver of a vehicle in a funeral procession"); ORS 811.495(2) (prohibition on coasting downhill "does not apply to the driver of a motorized bicycle"). Those explicit exceptions in ORS chapter 811 show that "[t]he legislature knows how to include qualifying language in a statute when it wants to do so," *PGE*, 317 Or at 614, yet the legislature chose not to include any such qualifying language in ORS 811.145.

Further, the legislative history of ORS 811.145—though sparse—suggests that, rather than creating exceptions for certain kinds of motorists, the legislature intended the offense provided in ORS 811.145 to apply to all drivers. The offense of failure to yield to an emergency vehicle was previously codified at *former* ORS 487.270 (1975), *see* Or Laws 1975, ch 451, § 40, before it was later codified at ORS 811.145 as part of the 1983 legislature's comprehensive reorganization and revision of the state's Vehicle Code, *see* Or Laws 1983, ch 338, § 582; *see also* HB 2031 (1983).[6] In

---

[6] *Former* ORS 487.270 (1975) provided, in relevant part:

"(1) Upon the approach of an emergency vehicle or ambulance using a visual signal or an audible signal or both according to requirements of ORS 487.075 and 487.085, the driver of every other vehicle shall yield the right of way, and except as provided in subsection (2) of this section, shall immediately drive to a position as near as possible and parallel to the right-hand edge or

reviewing the draft language that would eventually become ORS 487.270, the 1975 legislative committee working on the Vehicle Code was confronted with the difficulty of drafting a rule that would apply in a variety of different traffic situations. *See* Minutes, Senate Committee on Judiciary, Apr 10, 1974, 43-44; *see also* Oregon Vehicle Code, Part I, Art 4, Preliminary Draft No. 2, Interim Committee on Judiciary, Subcommittee on Revision (Mar 1974) (providing draft language later codified at *former* ORS 487.270 (1975)). The committee "held a lengthy discussion of various ways to resolve this problem, [and] finally concluded, as had the subcommittee, that the section was drafted as well as it could be and that, taken as a whole, the best answer was to have *all traffic* flowing to the right when an emergency vehicle approached." Minutes, Senate Committee on Judiciary, Apr 10, 1974, 44 (emphasis added). That indicates the legislature intended the offense of failure to yield to an emergency vehicle to apply to *all* motorists, including motorists who are or might be the subject of a traffic stop by law enforcement.

We also observe that, if defendant's construction of ORS 811.145 were correct, when an emergency vehicle approached a driver, that driver would not know whether they were required to yield in compliance with ORS 811.145 unless they first knew whether the approaching emergency vehicle intended to stop them or, for example, intended to go elsewhere or pass by. That is an untenable result, as drivers frequently do not know whether an approaching emergency vehicle intends to stop them or, for example, intends

---

curb of the roadway clear of any intersection and shall stop and remain in such position until the emergency vehicle or ambulance has passed, except when otherwise directed by a police officer."

We note that the report of the legislative committee working on the 1975 Vehicle Code revisions indicates that *former* ORS 487.270 (1975) was based on Uniform Vehicle Code UVC § 11-404. *See* Proposed Revision, Oregon Vehicle Code, Committee on Judiciary, § 40 (Jan 1975). We have reviewed relevant editions of the UVC and did not find any annotations, commentary, or other text that furthers our understanding as to how *former* ORS 487.270 (1975) or ORS 811.145 would operate in the circumstances presented by this case.

Additionally, when the Vehicle Code was reorganized and revised in 1983, "It [wa]s not the purpose or intent of the Oregon Legislative Assembly to change the law by enacting the revision of the Oregon Vehicle Code contained in chapter 338, Oregon Laws 1983"; rather, "[t]he intent of the assembly [wa]s to make the law relating to vehicles easier to use," and to "rearrang[e] existing concepts under the vehicle code in a more logical fashion." Or Laws 1983, ch 338, § 3.

to go elsewhere or pass by. Defendant's construction would, accordingly, frustrate the legislature's goal in enacting ORS 811.145(1) of having all traffic yield for emergency vehicles.[7]

Further, as stated above, a person is obligated to perform the actions listed in ORS 811.145(1)(a) - (c) when an emergency vehicle is approaching (that is, drawing nearer to, or advancing or maneuvering toward) the vehicle that the person is operating. Thus, regardless of Jarrell's intentions to either pass or not pass—and, by extension, defendant's understanding of those intentions—when Jarrell approached defendant's vehicle using his emergency lights, defendant was obligated to perform the actions listed in paragraphs (1)(a) - (c)—including yielding to Jarrell under paragraph (1)(a), immediately driving to the right-hand edge of the road under paragraph (1)(b), and stopping and remaining in such position under paragraph (1)(c) until the emergency vehicle had passed.

Nevertheless, as noted above, defendant relies on case law from three other states in support of her argument that ORS 811.145 is inapplicable to motorists who are the "target" of a traffic stop; we find those cases unhelpful in this case.[8]

_____

[7] Although we have not previously construed ORS 811.145, in *Pomerenke v. MVD*, 134 Or App 630, 636, 640, 896 P2d 1214 (1995) (Richardson, C. J., dissenting) (rejecting majority's conclusion that no evidence supported probable cause for traffic stop and its conclusion that stop based on failing to yield to an emergency vehicle was "pure conjecture"), *rev den*, 322 Or 167 (1995), the dissent stated that a motorist's obligations under ORS 811.145 apply whenever an emergency vehicle approaches using lights and sirens, regardless of the intention of the emergency vehicle's driver:

"When an emergency vehicle approaches, ORS 811.145 requires an absolute response from the motorist approached on the roadway. That is neither the time nor place to litigate whether the emergency vehicle is traveling to a legitimate emergency or is trying to stop someone else, or whether the emergency vehicle operator has lawfully activated the lights and siren. The obligation is to give the emergency vehicle the right of way whatever the reason for the emergency signal."

[8] As noted above, defendant cites case law from Washington, Georgia, and Alabama involving statutes worded similarly to ORS 811.145. Regarding the construction of statutes of this state, the Supreme Court has explained, "If the Oregon legislature adopts a statute or rule from another jurisdiction's legislation, we assume that the Oregon legislature also intended to adopt the construction of the legislation that the highest court of the other jurisdiction had rendered before adoption of the legislation in Oregon." *Jones v. General Motors Corp.*, 325 Or 404, 418, 939 P2d 608, 616 (1997). The cases cited by defendant do not indicate, nor does defendant argue, that ORS 811.145 and the statutes involved in

Applying our statutory construction methodology, we agree with the trial court's construction of ORS 811.145.[9]

## CONCLUSION

For the reasons explained above, we conclude that the trial court did not err.

Affirmed.

---

those other states' cases share a common lineage. Additionally, all the cases from other states cited in defendant's briefing either postdate the enactment of ORS 811.145 or were not decided by those states' highest courts. *See OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 593, 341 P3d 701 (2014) ("Court decisions that existed at the time that the legislature enacted a statute—and that, as a result, it could have been aware of—may be consulted in determining what the legislature intended in enacting the law as part of the context for the legislature's decision. * * * Case law published after enactment—of which the legislature could not have been aware—is another matter."); *see also Chinese Consolidated Benevolent Assn. v. Chin*, 316 Or App 514, 520, 504 P3d 1196 (2021) ("[H]ad the California Supreme Court construed the statute before the date of Oregon's enactment, we would presume that the legislature intended to adopt that construction. Here, though, the decisions that defendants point to are decisions of the California Courts of Appeals—some of which post-date Oregon's enactment—so no such presumption applies." (Citation omitted.)).

[9] On appeal, defense counsel asserted in a footnote in the opening brief and at oral argument that, although ORS 811.145 would not apply to a motorist that is being stopped by a law enforcement officer, two other provisions—ORS 811.535 and ORS 811.540—would still apply to a motorist that fails to obey an officer or attempts to elude an officer who uses a visual or audible signal to bring that motorist's vehicle to a stop. We do not understand, and defendant does not explain, how those two other provisions would operate so as to render ORS 811.145 inapplicable to a motorist in defendant's circumstances.