Submitted June 5, 2015, vacated and remanded July 27, 2016, petition for review allowed February 2, 2017 (360 Or 851)
See later issue Oregon Reports

GEORGE WILLIAM NULPH,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A157902

381 P3d 948

George W. Nulph filed the briefs *pro se.*

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

## SERCOMBE, P. J.

Petitioner seeks judicial review of an order of the Board of Parole and Post Prison Supervision (board), denying his request for a parole consideration hearing. Petitioner contends that the board's order denying his request either misinterprets and misapplies the relevant statute, ORS 144.228(1)(c),[1] or did not interpret the statute at all. The board responds that it properly applied ORS 144.228(1)(c). Because we conclude that the board erred in failing to interpret ORS 144.228(1)(c), we remand to the board for further proceedings.[2]

We review an order of the board "on the same basis as provided in ORS 183.482(8)." ORS 144.335(3) (2015).[3] In 1987, petitioner was convicted of first-degree rape, first-degree sodomy, first-degree kidnapping, and ex-convict in possession of a firearm. Petitioner committed those crimes during a temporary leave from prison while he was serving a sentence for murder. He was sentenced as a dangerous offender under ORS 161.725(1) (providing for an increased maximum prison sentence if the court finds that "because

---

[1] Except otherwise noted, all references to statutes and rules are to the versions in effect when petitioner committed his crimes in 1986.

[2] Our disposition obviates any need to address petitioner's second assignment of error, that the order is not supported by substantial evidence and substantial reason.

[3] ORS 183.482(8) (2015) provides:

"(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, the court shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if the court finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C) Otherwise in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public" and the "defendant is being sentenced for a Class A felony, and the court finds that the defendant is suffering from a severe personality disorder indicating a propensity toward criminal activity"). After a defendant is sentenced as a dangerous offender, ORS 144.228(1)(a) provides that the board must set a parole consideration hearing on the earliest date that "the prisoner is eligible for parole under the board's rules."[4] At the parole consideration hearing, the board determines whether the "condition which made the prisoner dangerous is absent or in remission," and, if the board makes one of those findings, it must set a release date for the prisoner. ORS 144.228(1)(b). If the board does not find that the dangerous condition is absent or in remission at the hearing, "reviews will be conducted at least once every two years until the condition is absent or in remission, at which time release on parole shall be ordered if the prisoner is otherwise eligible under the rules." *Id.*

---

[4] ORS 144.228 provides, in part:

"(1)(a) Within six months after commitment to the custody of the Corrections Division of any person sentenced under ORS 161.725 and 161.735 as a dangerous offender, the State Board of Parole shall set a date for a parole consideration hearing instead of an initial release date as otherwise required under ORS 144.120 and 144.125. The parole consideration hearing date shall be the earliest time the prisoner is eligible for parole under the board's rules.

"(b) At the parole consideration hearing, the prisoner shall be given a release date in accordance with the applicable range and variation permitted if the condition which made the prisoner dangerous is absent or in remission. In the event that the dangerous condition is found to be present, reviews will be conducted at least once every two years until the condition is absent or in remission, at which time release on parole shall be ordered if the prisoner is otherwise eligible under the rules. In no event shall the prisoner be held beyond the maximum sentence less good time credits imposed by the court.

"(c) Nothing in this section shall preclude a prisoner from submitting a request for a parole consideration hearing prior to the earliest time the prisoner is eligible for parole or a two-year review. Should the board find, based upon the request, that there is a reasonable cause to believe that the dangerous condition is in remission based upon the information provided in the request, it shall conduct a review as soon as is reasonably convenient.

"(2) For the parole consideration hearing, the board shall cause to be brought before it and consider all information regarding such person. The information shall include [a written report by a psychiatrist and a written report of the prisoner's conduct in prison.]"

ORS 144.228(1)(c) and OAR 255-38-005(4) allow a prisoner to request a parole consideration hearing prior to the date set by the board. To obtain a hearing, the prisoner must show that "there is a reasonable cause to believe that the dangerous condition is in remission based upon the information provided in the request[.]" ORS 144.228(1)(c). If the prisoner makes that showing, the board will "conduct a review as soon as is reasonably convenient." *Id.* Here, petitioner submitted a request to the board for a parole consideration hearing, asserting that there was reasonable cause to believe that the condition that made him dangerous—antisocial personality disorder—was in remission. In support of his request, petitioner attached evidence concerning the tendency of antisocial personality disorder to diminish with age, documentation showing that he did not require mental health treatment while incarcerated, copies of risk assessments conducted by the Department of Corrections that indicated that he was at low risk to reoffend if released from prison, and information about his good behavior while incarcerated that—according to petitioner—demonstrated that he no longer had antisocial personality disorder. Petitioner also argued that the phrase "reasonable cause" in ORS 144.228(1)(c) established a "probable cause" standard for granting a request for parole consideration hearing. According to petitioner, that standard required only that he make a "low threshold" showing that his claim was not "insubstantial" or "frivolous" and that his evidence was more than sufficient to meet that standard.

The board denied petitioner's request in a written order. *See* ORS 144.228(1)(d) (2015) (requiring the board to "issue a final order" that is "accompanied by findings of fact and conclusions of law," including "a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the board's order" when it denies a request for an early parole consideration hearing). The board action form (BAF) stated:

"The Board finds that the information submitted by inmate does not provide reasonable cause to believe that

the condition that made inmate dangerous is in remission (ORS 144.228(1)(c) (1984)), or that necessary supervision and treatment are available in the community (ORS 144.228(1)(c) (1993)).[5] Inmate does not provide evidence that he has identified and/or addressed the factors that led to his criminal behavior (kidnapping, rape, sodomy, and weapon possession while on prison leave from a murder sentence). Further, evaluations that are completed by the Department of Corrections for custodial purposes do not persuade the Board that inmate's danger to the community outside prison has diminished. Finally, compliant behavior in prison is not necessarily correlated with lawful behavior outside prison, as demonstrated by inmate's prior criminal sexual assaults while on temporary release, and following a 'successful' prison adjustment."

Following the denial of petitioner's request, he submitted a request for administrative review. Petitioner argued that the order was not supported by substantial evidence or substantial reason and that the board misinterpreted "reasonable cause" and erroneously required him to meet too high a standard. The board denied petitioner's request in an administrative review response (ARR), reiterating the reasons offered in the BAF. Petitioner subsequently filed a timely petition for judicial review.

On review, petitioner again contends that the board erroneously interpreted the term "reasonable cause" in ORS 144.228(1)(c) by failing to interpret the term to mean "probable cause" and imposing too high a threshold to obtain a parole consideration hearing under that statute. Petitioner also asserts that the board erred in failing to interpret the term at all. The board responds that the statute does not impose a specific standard but instead empowers the board to determine whether a prisoner has shown reasonable cause to believe that the dangerous condition is in remission at its discretion.

---

[5] The board stated both the standard in effect at the time petitioner committed his crime, whether the "condition that made the prisoner dangerous is in remission," and a standard subsequently adopted by amendment, whether "necessary supervision and treatment are available." Petitioner has never argued that there was reasonable cause to believe that necessary supervision and treatment for his condition are available in the community.

When a court reviews an administrative agency's construction of the statute, the meaning of the statute is "a question of law, 'ultimately for the court.'" *Bergerson v. Salem-Keizer School District*, 341 Or 401, 411, 144 P3d 918 (2006) (quoting *Springfield Education Assn. v. School Dist.*, 290 Or 217, 224, 621 P2d 547 (1980)). However, "depending on the nature of the statutory term at issue, an administrative agency's construction of a statute nevertheless may be entitled to a measure of deference." *OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 585, 341 P3d 701 (2014) (citing *Springfield Education Assn.*, 290 Or at 223). In *Springfield Education Assn.*, 290 Or at 223-30, the Supreme Court set out three categories of statutory terms and specified the standard of review for each category. The court summarized those categories in *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 353-54, 15 P3d 29 (2000):

"When an agency's interpretation or application of a provision of law is at issue, the reviewing court's standard of review depends upon whether the phrase at issue is an exact term, an inexact term, or a delegative term. *Springfield Education Assn.*, 290 Or at 223. 'Exact terms' impart relatively precise meanings, and their applicability in a particular case involves only agency factfinding. *Id.* at 223-24. This court reviews agency application of 'exact terms' for substantial evidence. *Id.* at 224. 'Inexact terms' are less precise. Although they embody a complete expression of legislative meaning, that meaning always may not be obvious. *Id.* As to 'inexact terms,' the task of the agency, and ultimately of the court, is to determine what the legislature intended by using those words. *Id.* 'Delegative terms' express incomplete legislative meaning that the agency is authorized to complete. *Id.* at 228. As to 'delegative terms,' the agency's task is to complete the general legislative policy decision. *Id.* This court reviews the agency decision concerning a 'delegative term' to determine whether it is within the range of discretion allowed by the more general policy of the statute. *Id.* at 229."

"Reasonable cause" is not an "exact term"; its meaning is not so precise that the question whether there is reasonable cause to believe that a prisoner's dangerous condition is in remission can be answered by factfinding alone.

*See OR-OSHA*, 356 Or at 589 (the phrase "'reasonable diligence' *** lacks a meaning so precise as to require only factfinding"); *Springfield Education Assn.*, 290 Or at 223 (examples of exact terms include "21 years of age, male, 30 days, Class II farmland, rodent, Marion County"). Thus, we must determine whether "reasonable cause" is an "inexact" or a "delegative" term.

In *OR-OSHA*, the court identified four considerations that courts have used to distinguish inexact from delegative terms. 356 Or at 590. First, courts have "compared a disputed term to those the court already has concluded are delegative in nature." Second, courts have "asked whether the disputed term is defined by statute or instead is readily susceptible to multiple interpretations." Third, courts have "inquired whether the term in contention requires the agency to engage in policy determinations or make value judgments, as opposed to interpreting the meaning of the statute." Finally, courts have "looked to the larger context of the statute in dispute, to determine whether other provisions suggest that the legislature did or did not intend a term to be regarded as delegative." *Id.*

Applying those considerations to "reasonable cause" as used in ORS 144.228(1)(c) leads us to conclude that the term is delegative in nature. First, the term is similar to other terms that courts have concluded are delegative in nature. *See id.* ("reasonable diligence" is a delegative term); *Bergerson*, 341 Or at 413 ("unreasonable" is a delegative term in part because it "is among the examples of delegative terms this court has noted previously"); *Springfield Education Assn.*, 290 Or at 228-29 ("good cause" is a delegative term) (citing *McPherson v. Employment Division*, 285 Or 541, 549-50, 591 P2d 1381 (1979)). Second, "reasonable cause" is not defined by statute, and it is readily susceptible to multiple interpretations. Petitioner's assertion that the term should mean "probable cause" is plausible. *See, e.g., Black's Law Dictionary* 1081 (5th ed 1979) (providing that "probable cause" is synonymous with "reasonable cause"). However, it is telling that the legislature used the phrase "probable cause" in two other sections of the same bill in which ORS 144.228(1)(c) was enacted. Or Laws 1981,

ch 644, §§ 1, 5, 7. That suggests that the legislature meant something other than "probable cause" when it used the term "reasonable cause" in ORS 144.228(1)(c). *Cf. State v. Ortiz*, 202 Or App 695, 699-700, 124 P3d 611 (2005) (relying on other statutes promulgated as part of the same bill as context when construing a statute); *State v. Newell*, 238 Or App 385, 392, 242 P3d 709 (2010) ("If the legislature uses different terms in statutes, we generally will assume that the legislature intends different meanings for those terms." (Internal quotation marks omitted.)).

Third, the phrase appears to contemplate that the board make a value judgment or policy determination about what type of evidence provides "reasonable cause" to believe that a petitioner's dangerous condition has diminished under the particular facts of each case. Put another way, it asks the board to determine what quality and quantum of evidence should be sufficient to establish "reasonable cause" that a dangerous condition is in remission. Finally, there is nothing in the context of ORS 144.228(1)(c) to indicate that the legislature intended "reasonable cause" to be something other than a delegative term. *See, e.g., J. R. Simplot Co. v. Dept. of Agriculture*, 340 Or 188, 197-98, 131 P3d 162 (2006) (concluding that "reasonably necessary" is an inexact term in the context of the broader statutory phrase "reasonably necessary to cover the cost of inspection and administration" because it "tells the department *how* to pursue the policy objective of funding an inspection program: It is to do so by setting fees that bear a defined relationship with the likely range of costs for the program" (emphasis in original)).

Thus, "reasonable cause" is a delegative term. Consequently, it authorizes the board to exercise its discretion to complete the general legislative policy embodied in the statute. In this context, ORS 144.228(1)(c) delegates authority to the board to establish a standard, within the confines of the general policy embodied by the term "reasonable cause" and the rest of ORS 144.228, to determine whether a prisoner is entitled to a parole consideration hearing. *Cf. McPherson*, 285 Or at 555 (the agency was required to "define 'good cause' within the overall policy and provisions

of the unemployment compensation law"). The board may complete that task either through rulemaking or "by adequate explanation in a final agency order following adjudication." *OR-OSHA*, 356 Or at 598. The board's definition and application of "reasonable cause" would then be reviewed to determine whether "the agency's decision is within the range of discretion allowed by the more general policy of the statute." *Springfield Education Assn.*, 290 Or at 229.

However, a court cannot review an agency's application of a delegative term if the agency has not first exercised the discretion granted to it by the legislature to define that term. *OR-OSHA*, 356 Or at 599; *see also Bergerson*, 341 Or at 416 (explaining that, in applying a delegative term, the agency "had a duty to complete the legislative meaning of the delegative term * * * consistently with the general policy" of the statute). If the agency has failed to exercise its discretion, the court must remand for the agency to do so. *OR-OSHA*, 356 Or at 599; *Bergerson*, 341 Or at 416 (where the agency failed to exercise its discretion "remand [was] necessary to allow the [agency] to complete the legislative meaning of the [delegative] term 'clearly an excessive remedy' and to apply that legislative policy rationally to the facts of [the] case").

The Supreme Court recently applied those principles in *OR-OSHA*. There, the agency, the Oregon Occupational Safety and Health Division (OR-OSHA), was charged with administering ORS 654.086(2). That statute provides that an employer is liable for a "serious violation" of the Oregon Safe Employment Act (OSEA) and its implementing rules "unless the employer 'did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.'" 356 Or at 591. The employer in *OR-OSHA* was cited for two serious violations of OSEA after an OR-OSHA compliance officer observed two employees working high off the ground without sufficient safety protection. *Id.* at 579-80. The employer contested the violations before the agency, and an administrative law judge (ALJ) determined that the employer was liable for serious violations of the OSEA because a supervisor had "sufficient time * * * to observe either or both the workers subject to the citations,

and * * * constructive knowledge [on the part of the employer] was established." *Id.* at 597.

On review, the court noted that, in his final order, the ALJ "correctly quoted from the statute" and "correctly construed whether the employer 'could not * * * know' to refer to what the employer was capable of knowing or discovering." *Id.* (ellipsis in original). However, it was not clear how the ALJ "interpreted or applied" the term "reasonable diligence." *Id.* Applying the *Springfield Education Assn.* framework, the court concluded that "reasonable diligence" was a delegative term, *id.* at 590-91, but explained that "the ALJ appear[ed] to have made his decision unaware of the delegative nature of the statutory standard of 'reasonable diligence.'" *Id.* at 598. The ALJ's decision concluded that it was possible that employer could have discovered the OSEA violations but did not evaluate the "possibility of discovering the violation[s] * * * in the context of 'reasonable diligence.'" *Id.* at 598-99. The court explained that, "[f]or us to review an agency's decision for consistency with the discretion delegated to the agency by law, it must be evident that the agency exercised that discretion in the first place." *Id.* at 599; *see also id.* (an agency must offer "some sort of explanation that enables a reviewing court to evaluate whether a decision comports with the authority granted under the law"). The court therefore remanded to the agency. *Id.*

Here, it also is not evident that the board exercised the discretion delegated to it by the legislature to complete the general policy embodied by the term "reasonable cause." Like the ALJ's decision in *OR-OSHA*, the board "correctly quoted from the statute" but did not make clear how it interpreted or applied the term "reasonable cause." The board does not define the term in the BAF or the ARR. The board also has not defined that term through rulemaking and did not reference any previous orders in which it defined the term or established criteria to determine whether a prisoner has established "reasonable cause" to believe that a dangerous condition is in remission. We therefore cannot infer what the applicable standard is from the final agency order in this case.[6]

---

[6] Indeed, the board appears to have applied the standard for obtaining an early release date to the determination of whether to have a hearing on obtaining

In sum, as used in ORS 144.228(1)(c), "reasonable cause" is a delegative term reviewed to ensure that the board acted within the scope of the discretion granted to it by the legislature. However, the board did not exercise its discretion to define "reasonable cause" or determine the meaning of the term in the conclusions of law required by ORS 144.228(1)(d) (2015). The failure to interpret and apply that definition of the delegative term constitutes an "erroneous[] interpret[ation] of a provision of law," and we must therefore remand for the board to interpret and apply that term to the facts of this case. *See* ORS 183.482(8)(a)(B) (2015) (where an agency "has erroneously interpreted a provision of law and *** a correct interpretation compels a particular action," a court shall "[r]emand the case to the agency for further action under a correct interpretation of the *** law"); *Bergerson,* 341 Or at 416-17 (remanding under ORS 183.482(8)(a)(B) in part because the agency failed to interpret and apply a delegative term).

Vacated and remanded.

---

an early release date. For example, the ARR concluded that some of the information presented by petitioner was "not so persuasive as to lead the Board to the conclusion that you no longer present a danger to the community." A determination that a prisoner's dangerous condition is "absent or in remission" under ORS 144.228(1)(b) and qualifies for an early release date is made after a parole consideration hearing and must be based upon a record that includes, among other things, a psychiatrist report and an official record of the prisoner's conduct in prison. That is a different standard and record than the one used to obtain a parole consideration hearing under ORS 144.228(1)(c) ("reasonable cause to believe that the dangerous condition is in remission" based on "information provided" by the prisoner).