No. 204          March 12, 2025          643

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

OREGON JUSTICE RESOURCE CENTER,
*Petitioner,*

*v.*

OREGON DEPARTMENT OF CORRECTIONS,
*Respondent.*

Department of Corrections
A177606

Argued and submitted September 20, 2023.

Benjamin Haile argued the cause for petitioner. Also on the briefs was Oregon Justice Resource Center.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Pagán, Judge, and Mooney, Senior Judge.

SHORR, P. J.

Judicial review dismissed as moot.

Pagán, J., dissenting.

**SHORR, P. J.**

Petitioner challenges, under ORS 183.400, the validity of administrative rules adopted by the Oregon Department of Corrections (DOC) in OAR chapter 291, divisions 11 and 105, that pertain to the use of disciplinary solitary confinement (DSC) in prison for periods longer than 15 consecutive days.[1] Petitioner raises four assignments of error and seeks a determination that the challenged rules were adopted without compliance with applicable rulemaking procedures; exceed statutory authority; and violate Article I, sections 13, 15, 16, and 41, of the Oregon Constitution.

Petitioner contends that the suffering and long-term psychological damage wrought by solitary confinement is well-documented in modern research and that the world is turning away from it and recognizing it as a form of torture. Petitioner claims, among other things, that "Oregon's persistence in using this brutal form of discipline violates the statutory mandates to use appropriate punishment, to forego cruel and unusual punishment, and to not use punishment that injures. Nor can the practice withstand constitutional scrutiny." Petitioner asserts that as part of our analysis in considering the merits of its rule challenge, we can and should consider dictionary definitions, laws and rules of other states—including DSC practices in other states—other Oregon Administrative Rules, science, legislative history, and national and international standards, such as the Mandela Rules and guidance from the National Commission on Corrections Healthcare. These issues have recently been before the legislature and DOC itself.[2] As we

---

[1] Petitioner's petition for judicial determination, which was filed on December 21, 2021, states that it seeks review of OAR 291-105-0015; OAR 291-105-0021; OAR 291-105-0046; OAR 291-105-0066; OAR 291-105-0072; OAR 291-105, Exhibit 1; and OAR chapter 291, division 11.

[2] While this matter has been pending, the Oregon legislature passed a law requiring DOC to set up a publicly available data dashboard on its use of DSC. Or Laws 2023, ch 245, § 1. That law is codified at ORS 421.200 and was operative on February 1, 2024. The staff measure summaries for House Bill (HB) 2345 A (2023) specifically identified legislative discussion of issues that included the issues raised in the merits of this case, including the Mandela Rules, violation of universal human rights standards, and the harm that comes to Adults in Custody—including serious mental health issues. House Committee on Judiciary, HB 2345 A, Staff Measure Summary (Apr 4, 2023); Senate Committee on Judiciary, HB 2345 A, Staff Measure Summary (May 8, 2023).

explain below, we do not reach the legal merits underlying the rule challenge. Rather, we conclude that this proceeding is moot. We also decline to exercise our discretion under ORS 14.175 to determine the validity of the challenged rules. Thus, we dismiss.

"Because we are not constitutionally empowered to decide moot cases, we must determine mootness even if it is not raised by the parties." *Reid v. DCBS*, 235 Or App 397, 400, 232 P3d 994 (2010). In the time since this proceeding was filed, each of the identified rules has been superseded by an amended rule on one or more occasions. Under Oregon case law, "[w]e long have held that the repeal or replacement of an administrative rule means an ORS 183.400 challenge seeking to invalidate the displaced rule is moot." *Mooney v. Oregon Health Authority*, 314 Or App 809, 811, 500 P3d 79 (2021); *see also Joint Council of Teamsters #37 v. BOLI*, 168 Or App 398, 412, 11 P3d 247, *rev den*, 331 Or 429 (2000) (citing *Edmunson v. Dept. of Ins. and Finance*, 314 Or 291, 838 P2d 589 (1992) ("[A] challenge to the validity of an expired or superseded rule is not 'kept alive' for mootness purposes by the fact that the superseded rule may have some continuing effect on the application or validity of a current rule."). Therefore, we directed the parties to show cause why this proceeding should not be dismissed as moot.

Both parties filed additional briefing. DOC contends that this proceeding is moot but urges us to exercise our discretion to reach petitioner's first, third, and fourth assignments of error and determine the validity of these rules. Petitioner contends that, although the rules have been amended, those amendments do not render the case moot because the same rules still facially violate the same laws and constitutional provisions in the same way that they did when petitioner filed the action. Petitioner argues in the alternative that if we determine that this action is moot, we should decide it under the exception to dismissal for mootness provided by ORS 14.175.

In support of its argument that this proceeding is not moot, petitioner attempts to distinguish *Mooney*, *Reid*, and *Hay v. Dept. of Transportation*, 301 Or 129, 719 P2d 860 (1986), which were cited in our order to show cause regarding

mootness. Petitioner argues that each involved a challenge to a rule that had been completely repealed or replaced, whereas here, the rules were amended and the amendments leave the challenged rules in a form that continues to be unlawful in the same ways, therefore those cases do not control. Petitioner's argument is unavailing. As we explained in *Joint Council of Teamsters #37*,

> "a challenge to a superseded rule is moot even when the superseded rule has some continuing effect on the application of the current rule because any harm allegedly caused by the invalidity of the superseded rule is, in actuality, a problem with the present rule. Consequently, in such circumstances, an appellate court can grant effectual relief only via a direct challenged to the *current* rule."

168 Or App at 412 (emphasis in original; internal quotation marks and citation omitted). Our case law supports a conclusion that unless petitioner's challenge is to a current rule, it is moot.

To determine mootness, we begin with setting out which rules are challenged by petitioner. As noted, petitioner identifies the challenged rules as contained in OAR chapter 291, divisions 11 and 105, and, in its petition, also identifies particular rules within division 105.[3] Petitioner has not amended its petition, and the rules challenged by petitioner are those in effect as of the date its petition was filed, December 21, 2021. All of the rules in OAR chapter 291, division 11, were amended and replaced, effective April 1, 2024.[4] All of the rules in OAR chapter 291, division 105, were amended and replaced, effective May 23, 2023, with the exception of OAR 291-105-0069 and OAR 291-105-0100.[5]

---

[3] The rules in OAR chapter 291, division 11, primarily cover the conditions of disciplinary segregation. The version of OAR 291-011-0005(2) in effect at the time the petition was filed states, "Purpose: To establish procedures and standards for the placing and maintenance of inmates in disciplinary segregation. Inmates in violation of rules of prohibited conduct are placed in disciplinary segregation." The rules in OAR chapter 291, division 105, pertain to "prohibited conduct and processing disciplinary actions."

[4] OAR 291-011-0080 has had two additional amendments since then.

[5] Those two rules that were not amended involve additional sanctions for major violations and vacating or withdrawing a disciplinary order—neither of which are involved in petitioner's challenge. Several rules in division 105 were subsequently amended in 2024; however, the major revisions appear to have been made in 2023.

Although petitioner makes a sweeping challenge to entire rule divisions that touch on DSC, as we understand its argument, both the petition and the briefing make clear that the crux of petitioner's argument is centered on two rules that allow imposition of DSC for longer than 15 consecutive days: OAR 291-105-0066 (Principles of Application of Disciplinary Sanctions) and OAR 291-105, Exhibit 1 (Major Violation Grid). OAR 291-105-0066 (Dec 15, 2020)[6] was substantively amended, in part, to reflect that the maximum number of days that could be served in DSC was cut in half, from 180 days to 90 days. *See* OAR 291-105-0066 (May 23, 2023) (reflecting 90-day maximum). The major violations grid, which governs disciplinary action for major violations, was replaced. In the current version, effective October 22, 2024, there are five categories instead of four, and the maximum length of DSC is cut in half for certain categories and removed from others. *Compare* OAR 291-105, Exhibit 1 (Dec 2020) *with* OAR 291-105, Exhibit 1 (Oct 22, 2024).

Those recent amendments reflect that DOC has changed policy. For OAR chapter 291, division 105, the Notice of Proposed Rulemaking filed on March 30, 2023, states in part,

"The purpose of this rule is to define the rules of conduct governing adults in custody [(AICs)] and outline the procedures to be followed in processing disciplinary actions(s). * * * Through these changes, we intend to further our longstanding commitment to place fewer AICs in segregation for shorter periods of time. This change will reduce the maximum consecutive sanction to DSU from 180 days to 90 days and fix other minor grammatical and punctuation corrections."

The Notice also recognizes that

"[i]mposing a disciplinary segregation sanction temporarily limits an AIC's access to the benefits and privileges associated with living in a general population or non-restrictive housing. AICs who receive disciplinary segregation sanctions and have limited access to those benefits and privileges may face greater barriers to successfully returning to the community within or outside a correctional facility. By

---

[6] When petitioner filed this proceeding, a temporary amendment to OAR 291-105-0066 was in effect that also contained a 180-day provision.

reducing or eliminating disciplinary segregation sanctions for certain categories of disciplinary rule violations, DOC may consider lesser or alternative sanctions or interventions to deter misconduct, encourage pro-social behavior, and help reduce the barriers an AIC may have to successfully entering the community within or outside a correctional facility."

Petitioner also contends that, in addition to the core challenge to the duration of solitary confinement, it challenges two rules that unlawfully restrict the daily amount of time a prisoner is allowed out of the cell during disciplinary confinement: OAR 291-011-0060(12) and OAR 291-011-0064(2). Petitioner argues that the amendments to OAR 291-011-0060 were non-substantive and therefore the challenge to the rule is not moot, and that the amendments to OAR 291-011-0064 increased a loss of privileges sanction and that a rule change that *increases* the basis for the facial challenge to the rule cannot render the challenge moot. Although petitioner did refer specifically to those two rules in its opening brief, they were discussed as an argument in support of petitioner's first assignment of error that DOC's rules providing for prolonged DSC contravene ORS 421.105, and they are not the rules that form the basis of the heart of petitioner's rule challenge. Even if we agreed that those amendments did not render the challenge to those two rules moot, that would not prevent the rest of the rule challenge from being moot. Further, as petitioner acknowledges, the rules *were* amended and therefore petitioner's challenge is not to the current rules in effect.

As noted above, in the event we determine that the proceeding is moot, both parties urge us to proceed with this action, in part or in whole, under ORS 14.175. *See Couey v. Atkins*, 357 Or 460, 522, 355 P3d 866 (2015) (ORS 14.175 "leaves it to the court to determine whether it is appropriate to adjudicate an otherwise moot case under the circumstances of each case."). ORS 14.175 provides:

"In any action in which a party alleges that an act, policy or practice of a public body, as defined in ORS 174.109, or of any officer, employee or agent of a public body, as defined in ORS 174.109, is unconstitutional or is otherwise contrary to law, the party may continue to prosecute the action and the court may issue a judgment on the validity

of the challenged act, policy or practice even though the specific act, policy or practice giving rise to the action no longer has a practical effect on the party if the court determines that:

"(1)  The party had standing to commence the action;

"(2)  The act challenged by the party is capable of repetition, or the policy or practice challenged by the party continues in effect; and

"(3)  The challenged policy or practice, or similar acts, are likely to evade judicial review in the future."

First, it is undisputed that petitioner has standing to bring this challenge. Second, both parties contend that the second element is met because the policy challenged by petitioner—sanctions of more than 15 days in solitary confinement—is still in effect. We agree that the current rules continue to permit sanctions of more than 15 days in DSC; however, as noted above, the March 2023 notice of proposed rulemaking indicates that DOC was instituting a policy change with the 2023 amendments: "to place fewer AICs in segregation for shorter periods of time."

Even if the first two elements are met, we must turn to the third element. Both parties assert that the challenged policy is likely to evade judicial review in the future. Petitioner contends that the frequency of rule changes shows that a rule challenge under ORS 183.400 is likely to evade review. DOC asserts that, although it cannot say with certainty that it intends to amend its rules, it is likely that the challenged rules will continue to be amended over time. DOC also argues that any rule challenge under ORS 183.400 is likely to take more than two years and, given the historical frequency with which these rules have been amended, it is likely that the rules would be amended again before any new rule challenge raising these issues could be litigated. We have reviewed the history of amendments to OAR chapter 291, divisions 11 and 105, and disagree with the parties' view that these rules have historically been amended on a frequent basis. For example, most of the rules in OAR chapter 291, division 105, were amended in 2011 and then a lengthy time period passed until they were amended again in 2020, and most of the rules in OAR chapter 291, division

11 were amended in 2006 and then not again until 2024.[7] It is our assessment that the rules are not regularly amended such that the issue would evade review if the current version of the rules were challenged. *Cf. Sarepta Therapeutics v. Oregon Health Authority*, 325 Or App 480, 484, 530 P3d 103, *rev den*, 371 Or 333 (2023) (challenge likely to evade review due to length of judicial process and fact that "rule is permanently amended every six months, and regularly amended on a temporary basis even more often").

Finally, even if the criteria of ORS 14.175 were met, we would not exercise our discretion to consider this moot action. "In determining whether to exercise our discretion, we consider, among other things, 'the adversarial nature of the parties' interests, the effect of the decision on both the parties and others not before the court, judicial economy, and the extent of the public importance of the issues presented.'" *NewSun Energy, LLC v. Public Utility Comm.*, 336 Or App 515, 522, 561 P3d 1135 (2024) (quoting *Eastern Oregon Mining Assoc. v. DEQ*, 285 Or App 821, 830, 398 P3d 449 (2017), *aff'd*, 365 Or 313, 445 P3d 251 (2019), *cert den*, ___US ___, 141 S Ct 111, 207 L Ed 2d 1052 (2020)).

We acknowledge that this rule challenge affects not only the parties, but a wider group of individuals—those who are incarcerated. Further, although the issue presented is important, we recognize that the current climate is one of moving away from DSC; DOC has reduced its availability in the current rules and the legislature in 2023 recognized the harm it causes.

However, considering the breadth of petitioner's challenge to these now amended rules and the narrow scope within which we are permitted to review direct rule challenges, we conclude that it is not prudent to exercise our discretion to consider the petition. Under ORS 183.400, the record before us is restricted in a rule challenge. Specifically, under ORS 183.400(3):

"Judicial review of a rule shall be limited to an examination of:

---

[7] We acknowledge that certain rules, including OAR 291-105-0066—one of the main rules at issue in this action, had an additional amendment in 2018.

"(a)   The rule under review;

"(b)   The statutory provisions authorizing the rule; and

"(c)   Copies of all documents necessary to demonstrate compliance with applicable rulemaking procedures."

It appears to us that petitioner is attempting to litigate the factual circumstances of DSC by asking us to consider substantial extra material and information not permitted under ORS 183.400(3). The scope of our review under ORS 183.400 is limited. *AFSCME Local 2623 v. Dept. of Corrections*, 315 Or 74, 79, 843 P2d 409 (1992). "Aside from questions that might arise concerning the facts surrounding the process of adopting a rule * * * judicial review under ORS 183.400 is limited to the face of the rule and the law pertinent to it." *Id.*

Further, because the rules being challenged here are the rules that were in effect in December 2021 instead of the current rules, we do not have access to the rule-making record that reflects DOC's 2023 rule changes, and the parties have not articulated a persuasive reason to depart so significantly from how we approach rule challenges in order to resolve the merits of this case based on old information. As we stated in *Eastern Oregon Mining Assoc.*, "[w]e may * * * consider whether judicial economy supports addressing the issue presented by the litigation before us based on the existing record and circumstances or whether another, future case might present a more developed record or more thoroughly developed arguments." 285 Or App at 831. The parties have not persuaded us why it makes sense for us to review the rules on an old record when there have been significant policy changes in the meantime. Both the legislature and DOC have been active in changing policy in response to some of the very arguments petitioner is making to us now. For those reasons, we decline to exercise our discretion to consider petitioner's rule challenge, and, therefore, dismiss.

Judicial review dismissed as moot.

**PAGÁN, J.,** dissenting.

I agree with the majority that the proceeding is moot because in the time since this proceeding was filed,

the identified rules have been amended on one or more occasions. *See Mooney v. Oregon Health Authority*, 314 Or App 809, 811, 500 P3d 79 (2021) (stating that the repeal or replacement of an administrative rule renders a challenge to that rule under ORS 183.400 moot). However, unlike the majority, I would instead abide by the wishes of both parties before the court and exercise our discretion to determine the validity of the rules under ORS 14.175 and would decide petitioner's challenge on the merits. For that reason, I respectfully dissent, and write separately to explain why I would exercise our discretion to review petitioner's challenge and, upon reaching the merits, would conclude that the rules are facially valid.

## MOOTNESS

Under ORS 14.175:

"In any action in which a party alleges that an act, policy or practice of a public body, as defined in ORS 174.109, or of any officer, employee or agent of a public body, as defined in ORS 174.109, is unconstitutional or is otherwise contrary to law, the party may continue to prosecute the action and the court may issue a judgment on the validity of the challenged act, policy or practice even though the specific act, policy or practice giving rise to the action no longer has a practical effect on the party if the court determines that:

"(1)   The party had standing to commence the action;

"(2)   The act challenged by the party is capable of repetition, or the policy or practice challenged by the party continues in effect; and

"(3)   The challenged policy or practice, or similar acts, are likely to evade judicial review in the future."

The majority contends that even if petitioner has met the first and second elements of ORS 14.175, petitioner has not met the third element because "the rules are not regularly amended such that the issue would evade review if the current version of the rules were challenged." ___ Or App at ___ (slip op at ___). In support of this argument, the majority points out that many of the rules in OAR chapter 291, division 105, were amended in 2011 and then not amended again until 2020, and most of the rules in OAR

chapter 291, division 11 were amended in 2006 and then not again until 2024.

However, the majority's contention that the rules are not "regularly amended" ignores the fact that since the petitioner initiated the challenge in 2021, the challenged rules have been amended five times.[1] As petitioner points out, these amendments continue to prescribe prolonged disciplinary solitary confinement in excess of 15 days and do not resolve any of petitioner's grounds for a facial challenge. Given the *recent* historical frequency with which these rules have been amended, it is likely that the rules will be amended again before any new challenge raising these issues can be litigated. *See Sarepta Therapeutics, Inc. v. Oregon Health Authority*, 325 Or App 480, 483-84, 530 P3d 103, *rev den*, 371 Or 333 (2023) (exercising our discretion to review a rule challenge because, even though the challenge was moot, the rule was frequently amended, and requiring a petitioner to amend the petition each time the rule was amended was unduly burdensome due to the length of the judicial review process).

Further, "[i]n determining whether to exercise our discretion, we consider, among other things, the adversarial nature of the parties' interests, the effect of the decision on both the parties and others not before the court, judicial economy, and the extent of the public importance of the issues presented." *Sarepta Therapeutics, Inc.*, 325 Or App at 485. Here, the parties' interests remain adverse, and the issue raised will affect not only the parties involved, but potentially many Adults in Custody (AICs) in respondent's custody, now and in the future. The issues presented are of public importance, and the parties have expended considerable resources presenting them in court. Thus, I would exercise discretion to review the case under ORS 14.175.

## PETITIONER'S RULE CHALLENGE

Turning to the merits of the challenge, petitioner challenges an administrative agency rule in an original proceeding before this court under ORS 183.400. Specifically,

---

[1] Specifically, rules in OAR chapter 291, division 105, were amended in March 2022, September 2022, May 2023, and June 2024. OAR chapter 291, division 11, was amended in April 2024.

petitioner appears to challenge the validity of the entirety of OAR chapter 291, divisions 11 and 105, which include the rules adopted by the Oregon Department of Corrections (DOC) to implement the use of disciplinary solitary confinement (DSC) for periods longer than 15 consecutive days. Raising four specific challenges, petitioner contends that the rules (1) exceed statutory authority, (2) were adopted without compliance with rulemaking requirements, (3) violate constitutional limits on the rigor of punishment, and (4) violate the constitutional mandate that prisoners must work.

I begin by briefly addressing petitioner's second and fourth challenges before discussing petitioner's primary argument—raised, respectively, in the first and third challenges—that any form of solitary confinement over 15 days violates statutory mandates and the Oregon Constitution. Before discussing petitioner's arguments, however, I emphasize from the onset the limited scope of review for a rule challenge brought under ORS 183.400.

Under ORS 183.400, review is limited to an examination of "[t]he rule under review," "[t]he statutory provisions authorizing the rule," and "[c]opies of all documents necessary to demonstrate compliance with applicable rulemaking procedures." ORS 183.400(3). Despite that limitation, petitioner presents us with citations to a large volume of secondary sources, primarily the United Nations Rules on the treatment of prisoners (known as "the Nelson Mandela Rules"), numerous articles on solitary confinement and the negative effects it has on AICs when it is imposed for longer than two weeks, and various laws and standards from across the country. Those sources detail that solitary confinement longer than 15 days is excessive, unnecessary, and physically and mentally harmful to prisoners. Petitioner argues that the secondary sources may be used to "define terms used in the rules under review and the statutes and constitutional sections they violate."

I want to loudly acknowledge that within the last decade, numerous studies have concluded that prolonged segregation causes serious harm to the people subjected to it. *See, e.g.,* United Nations General Assembly, *Standard*

*Minimum Rules for the Treatment of Prisoners* (the Nelson Mandela Rules) G.A. Res. 70/175, Annex, Rule 43 (Dec. 17, 2015), *available at* https://docs.un.org/en/A/RES/70/175 (accessed Mar 3, 2025) (providing that long-term solitary confinement amounts to "torture" and "shall be prohibited"). I am sympathetic to the concerns that petitioner raises about the harm caused by solitary confinement. However, this case ultimately presents the question of whether ORS 183.400 permits Oregon courts to consider the large body of secondary sources offered by petitioners, or whether petitioners, who seek to challenge such practices based on the secondary sources, must seek a different forum for their requested relief, such as an as-applied challenge in which they could develop a factual record sufficient to demonstrate the infirmity of the challenged practices. *See Oregon Newspaper Publishers v. Dept. of Corrections*, 329 Or 115, 118-19, 988 P2d 359 (1999) ("The reviewing court examines the challenged rules only to determine whether those rules on their face comply with applicable constitutional and statutory requirements. If the rules comply, then any further challenge to them must be made on an 'as applied' basis.")

Despite petitioner's contention that the secondary sources may be used to define relevant terms, I would conclude that extra-record documents that petitioner has provided should not be considered. Both the statutory language of ORS 183.400 and case law from the Oregon Supreme Court unequivocally direct that our review is limited to the language of the rule and the statutes and constitutional provisions that govern it, and rulemaking documentation. *See Wolf v. Oregon Lottery Comm'n*, 344 Or 345, 355, 182 P3d 180 (2008) (rejecting efforts to inject extraneous material into the facial review of the rules challenged).

Here, petitioner's challenge requires fact-finding because DOC does not concede that the findings in the various submitted studies are accurate, binding, or, more importantly, applicable to the DSC the Oregon Administrative Rules allow for. The state argues—and I agree—that we cannot consider the documents because their probative value depends on our court finding them credible and applicable, both of which are in dispute. *See, e.g., AFSCME Local 2623 v. Dept. of Corrections*,

315 Or 74, 79, 843 P2d 409 (1992) ("Numerous individual fact situations can arise under any rule, but judicial review of the rule as applied to each of those situations is reserved to other forums."). Although it might be helpful to consider external authorities to determine the meaning of the language used in the rules, whether the policy choices expressed in the rules are good, bad, or indifferent is irrelevant to the task in a facial rule challenge. A rule may be declared invalid only if we conclude that the rule violates constitutional provisions, exceeds the agency's statutory authority, or was adopted without complying with rulemaking procedures. *See* ORS 183.400(4). Thus, for those reasons, I would decline to consider the secondary sources provided by the petitioner.

## ANALYSIS

As a preliminary matter, I would reject petitioner's second challenge, which contends that the challenged rules do not comply with rulemaking procedures because they fail to cite ORS 421.105 as authority for the rules. To the contrary, the OAR chapter 291, division 11 rules do contain a reference to ORS chapter 421 for statutory authority and the division 105 rules refer to various statutes in ORS chapters 179, 421, and 423.[2] Those references are sufficient to provide the required notice to members of the public and AICs that their interests might be affected. As such, the rules comply with ORS 183.335, and they do not fail to meet rulemaking requirements.

I also disagree with petitioner's fourth challenge, in which petitioner argues that the rules violate Article I, section 41, of the Oregon Constitution, which requires that inmates be "actively engaged full-time in work or on-the-job training."[3] Although section 41 reflects a clear intention by electors that all AICs engage in productive work, that

---

[2] Specifically, the division 105 rules reference ORS 179.040, ORS 421.068, ORS 421.180, ORS 423.020, ORS 423.030, and ORS 423.075. *See* OAR 291-105-0005(1). Those statutes refer, respectively, to the general powers and duties of the Department of Corrections, including the authority to adopt rules for the guidance of the agency.

[3] Article I, section 41, was added to the state constitution by voter approval of an initiative petition in November 1994. In 1997, the 69th Oregon Legislative Assembly proposed adding language to section 41(3) clarifying that AICs do not have a right to work or compensation. *See* HJR 2 (1997). That amendment to the state constitution was approved in May 1997.

section also provides that "no inmate has a legally enforceable right to a job or to otherwise participate in work." Or Const, Art I, § 41(3). That language indicates that Article I, section 41, is hortatory, rather than creating an enforceable right for AICs. Thus, prolonged DSC is not facially irreconcilable with the mandates of Article I, section 41.

A.  *Prolonged Disciplinary Solitary Confinement Does Not Exceed Statutory Authority*

        In the first challenge, petitioner contends that prolonged DSC is not appropriate punishment and exceeds the statutory authority provided by ORS 421.105 because it amounts to "cruel or unusual punishment." *See* ORS 183.400(4)(b) (requiring the invalidation of a rule that "[e]xceeds the statutory authority of the agency"). When reviewing whether the agency acted within its statutory authority, our inquiry is limited to "the wording of the rule itself * * * and the statutory provisions authorizing the rule." *Wolf*, 344 Or at 355 (citing ORS 183.400(3)(a), (b)); *see also Oregon Newspaper Publishers,* 329 Or at 118-19 (holding that if the rules "on their face comply with applicable constitutional and statutory requirements" then they must be challenged on an "as applied basis"). As with other questions of statutory construction, in determining the scope of an agency's statutory authority, "we seek to discern the legislature's intent by examining the text and context of the relevant statutes and, if useful to the analysis, pertinent legislative history." *Assn. of Acupuncture v. Bd. of Chiropractic Examiners*, 260 Or App 676, 678, 320 P3d 575 (2014) (citing *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009)).

        ORS 421.105 allows the superintendents of correctional facilities to enforce obedience to rules of conduct. That statute provides, in full, that:

    "(1)   The superintendent may enforce obedience to the rules for the government of the adults in custody in the institution under the supervision of the superintendent by *appropriate* punishment but neither the superintendent nor any other prison official or employee may strike or inflict physical violence except in self-defense, or inflict any *cruel or unusual punishment*.

"(2)   The person of an adult in custody sentenced to imprisonment in the Department of Corrections institution is under the protection of the law and the adult in custody shall not be injured except as authorized by law."

ORS 421.105 (emphasis added).

Notably, ORS 421.105 explicitly authorizes superintendents to enforce obedience to the rules by "appropriate" punishment, provided that no prison official or employee may strike or use physical violence on AICs except in self-defense and may not inflict "cruel or unusual punishment." Here, petitioner argues that the term "appropriate" as it applies to "appropriate punishment," is an inexact term under administrative law that we must interpret to decide if the rule is consistent with legislative policy.[4]

Following the framework described by the Oregon Supreme Court to answer that question, the first inquiry requires consideration of whether "appropriate" is "an 'exact' term, an 'inexact' term, or a 'delegative' term—that is, how much interpretive authority the legislature delegated to the agency when using that term." *Blachana, LLC v. Bureau of Labor and Industries*, 354 Or 676, 687, 318 P3d 735 (2014). Exact terms "impart relatively precise meaning," and "[t]heir applicability in any particular case depends upon agency fact-finding." *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223-24, 621 P2d 547 (1980). Inexact terms "express a complete legislative meaning but with less precision." *Bergerson v. Salem-Keizer School Dist.*, 341 Or 401, 413, 144 P3d 918 (2006). In such cases, the courts examine the meaning of the statute without deference to the agency's construction. *Blachana,* 354 Or at 687 (agency's interpretation of nondelegative term "is not entitled to deference on review"). Delegative terms "express incomplete legislative meaning that the agency is authorized to complete." *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 354, 15 P3d 29 (2000).

With those considerations in mind, I would readily conclude that the term, "appropriate" is not an exact term

---

[4] Petitioner also contends that the ordinary meaning of "cruel or unusual" in ORS 421.105(1) applies. However, we conclude that that phrase reflects the prohibition of cruel and usual punishment as reflected in Article I, section 16, of the Oregon Constitution.

because it is not so precise as to require only factfinding. *See OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 589, 341 P3d 701 (2014) (the phrase "'reasonable diligence' * * * lacks a meaning so precise as to require only factfinding"); *Springfield Education Assn.*, 290 Or at 223 (examples of exact terms include "21 years of age, male, 30 days, Class II farmland, rodent, Marion County"). Thus, the question then turns on whether "appropriate" is an "inexact" or a "delegative" term.

In determining whether a given term is delegative, the Oregon Supreme Court has taken several considerations into account. *OR-OSHA*, 356 Or at 590. First, the court "often has compared a disputed term to those the court already has concluded are delegative in nature." *Id.* Second, "the court has asked whether the disputed term is defined by statute or instead is readily susceptible to multiple interpretations." *Id.* Third, "the court has inquired whether the term in contention requires the agency to engage in policy determination or make value judgments." *Id.* Finally, the court has "looked to the larger context of the statute in dispute, to determine whether other provisions suggest that the legislature did or did not intend a term to be regarded as delegative." *Id.*

Applying the above considerations to "appropriate," as used in ORS 421.105, leads me to the conclusion that the term is delegative in nature. First, the term is similar to the sort of terms that the court has regarded as delegative in prior cases. *See Nulph v. Bd. of Parole*, 279 Or App 652, 659, 381 P3d 948 (2016), *rev dismissed*, 361 Or 351 (2017) ("reasonable cause" is delegative in nature); *OR-OSHA,* 356 Or at 590 ("reasonable diligence" is a delegative term); *Bergerson*, 341 Or at 413 ("unreasonable" is a delegative term in part because it "is among the examples of delegative terms this court has noted previously"); *Springfield Education Assn.*, 290 Or at 228-29 ("good cause," "fair," "unfair," "undue," "unreasonable," and "public convenience and necessity" are examples of delegative terms because they call for "completing a value judgment that the legislature itself has only indicated").

Second, the term "appropriate" is easily susceptible to multiple interpretations, and the term has not been

defined by statute. That determination is consistent with petitioner's argument that we should consider secondary sources to define the boundaries of what constitutes "appropriate" punishment.

Third, "appropriate" appears to contemplate that the agency make a value judgment or policy determination as to the degree of penalty to apply for misconduct that affects the danger, security, and order of the institution. The term is not tied to a definition, nor is there any reference to what the agency should use to make that determination. In other words, the statutory framework and context of ORS 421.105 does not indicate that the agency was being directed to use any predetermined metrics for what is appropriate. To the extent that the legislature sought to define what appropriate was, it only gave the agency a limit of what was *not* appropriate—specifically, the prohibition on striking or physical violence except in self-defense and no cruel or unusual punishment—indicating that, other than the prohibition of certain conduct, it was up to the agency to decide what would constitute "appropriate" punishment. *See, e.g., Nulph*, 279 Or App at 659 (concluding that the phrase "reasonable cause" was delegative because the phrase appeared to contemplate that the board make a value judgment or policy determination about "what quality and quantum of evidence should be sufficient to establish 'reasonable cause' that a dangerous condition is in remission"); *cf. J. R. Simplot Co. v. Dept. of Agriculture*, 340 Or 188, 197-98, 131 P3d 162 (2006) (explaining that the phrase "reasonably necessary to cover [costs]" was an inexact term because the statute at issue set out a complete policy objective and that the phrase at issue specified the relationship between the complete legislative policy and the vehicle identified by the legislature for pursuing that policy, *i.e.*, fees). Thus, for those reasons, I would conclude that the legislature intended "appropriate" as a delegative term.

Having rejected petitioner's argument that "appropriate" is an inexact term, the inquiry turns on petitioner's alternative contention that if "appropriate" is a delegative term, then prolonged DSC is beyond the scope of policymaking authority that the legislature has delegated. Petitioner

argues that the grant of authority delegated by the term "appropriate" punishment, in the context of the prohibitions on "cruel or unusual punishment," does not confer the policy choice to use prolonged DSC.

Where a statutory term is delegative, the agency must determine the legislative policy underlying the statute and construe and apply the term consistently with that policy. *Springfield Education Assn.*, 290 Or at 223. Review is then limited to determining whether the agency exercised the authority delegated to it "within the range of discretion allowed by the more general policy of the statute." *Id.* at 229. "Determining the general policy expressed in the statute is itself a matter of statutory construction." *Hale v. Water Resources Dept.*, 184 Or App 36, 41, 55 P3d 497 (2002). Accordingly, we apply the interpretive principles established by *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) and *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (examining statutory text, context, and legislative history at the first step, followed by general maxims of construction if uncertainty remains).

Other than the prohibition on striking or physical violence except in self-defense, and no cruel or unusual punishment, ORS 421.105 provides no definition of the term "appropriate," and nothing indicates that the legislature intended it to have a special legal meaning. However, looking to its common dictionary definition, we find that "appropriate" is defined as "specially suitable." *Webster's Third New Int'l Dictionary* 106 (unabridged ed 2002); *see also Massee and Massee,* 328 Or 195, 202, 970 P2d 1203 (1999) (using common dictionary definition of term where no definition was provided in statute). Thus, in the present context, "appropriate" means "specially suitable" for some purpose or situation, and I am unaware of any relevant context that would suggest a contrary or different interpretation. *See Bergerson*, 341 Or at 414 (relying upon dictionary definition where statute does not define the term and context does not differ from the dictionary definition of term).

Given the statutory text and context of ORS 421.105, I would conclude that the legislature intended to delegate to DOC the authority to determine "appropriate" punishment,

so long as the agency complies with the statutory limitations (*i.e.*, no physical violence or striking unless in self-defense) and the United States Constitution and Oregon State Constitution (*i.e.*, no cruel and unusual punishments). Petitioner has provided no legislative history to suggest that the legislature intended otherwise. *See* ORS 174.020(3) ("A court may limit its consideration of legislative history to the information that the parties provide to the court."). To the extent that petitioner argues that prolonged DSC is, as a matter of law, cruel or unusual, petitioner relies entirely on secondary materials that are outside the scope of a facial rule challenge. As such, in my view, DOC did not exceed its authority by adopting the challenged rules.

B.  *Petitioner's Constitutional Challenges*

In the third challenge, petitioner argues that disciplinary segregation of more than 15 days violates Article I, sections 13, 15, and 16, of the Oregon Constitution because it is "unneeded and extremely harmful." Under ORS 183.400(4)(a), the court shall declare an administrative rule invalid if it "[v]iolates constitutional provisions."

In determining the meaning of a provision of the original state constitution, we examine "the text of the provision in context, the historical circumstances of the adoption of the provision, and the case law that has construed it," in order to "determine the meaning most likely intended or understood by the framers of the constitution." *State v. Mills*, 354 Or 350, 353-54, 312 P3d 515 (2013). The purpose of that analysis is not to "fossilize the meaning of the state constitution so that it signifies no more than what it would have been understood to signify when adopted in the mid-nineteenth century"; rather, the goal "is to determine the meaning of the constitutional wording, informed by general principles that the framers would have understood were being advanced by the adoption of the constitution." *Id.* at 354 (citing *State v. Davis*, 350 Or 440, 446, 256 P3d 1075 (2011); *State v. Savastano*, 354 Or 64, 72, 309 P3d 1083 (2013)).

Petitioner contends that the challenged rules violate Article I, section 16, of the Oregon Constitution, which

reads, in relevant part: "Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense." Specifically, petitioner argues that emerging knowledge about the severe harmfulness of prolonged DSC, and the national and international standards against it, require that Article I, section 16, prohibit prolonged DSC. Petitioner also contends that the use of prolonged DSC to punish misconduct, particularly nonviolent offenses, violates the proportionality requirement of Article I, section 16.

The test for determining whether a criminal sentence violates the proportionality requirement is whether the sentence is so disproportionate to the offense that it shocks the moral sense of all reasonable persons as to what is right and proper. *State v. Thorp*, 166 Or App 564, 570, 2 P3d 903 (2000).

It is not clear from the language of Article I, section 16, that the proportionality requirement was intended to apply outside the context of sentencing; it states, "all penalties shall be proportioned to the offense."[5] However, assuming that Article I, section 16 does apply to the context of DSC, it still leaves us with the following issue: whether a disciplinary sanction of solitary confinement longer than 15 days for the most serious class of misconduct, including physical and sexual assault of other AICs, shocks the moral sense of all reasonable persons. That is a judgment call that cannot be made in a facial challenge to a rule because it necessitates a fact-driven analysis that would require the creation of an evidentiary record. Further, such analysis necessarily requires the court to hypothesize factual scenarios under the rules, comparing them with constitutional provisions and concerns, which we are prohibited from doing in this context. *See Sarepta Therapeutics*, 325 Or App at 501 (concluding that in "this facial rule challenge, we are not permitted to use hypothetical individual facts as a basis on which to invalidate a rule") (footnote omitted); *Smith*

---

[5] In analyzing federal claims under the Eighth Amendment, the United States Supreme Court has said that "given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 US 215, 224, 96 S Ct 2532, 49 L Ed 2d 451 (1976).

*v. Dept. of Corrections*, 219 Or App 192, 198, 182 P3d 250 (2008), *rev den*, 345 Or 690 (2009) (concluding that the petitioner, who challenged the constitutionality of certain DOC rules that imposed prohibitions on mail content, could not prevail in a proceeding under ORS 183.400 because such a challenge required the creation of an evidentiary record to establish that the challenged restrictions were unnecessarily rigorous).

For similar reasons, I also disagree with petitioner's contention that the challenged rules violate Article I, section 13, of the Oregon Constitution, which states, in full: "[n]o person arrested, or confined in jail, shall be treated with unnecessary rigor." Here, petitioner argues that the DOC rules providing for prolonged DSC violate the Unnecessary Rigor Clause because "DOC's practice of disciplinary confinement longer than 15 consecutive days inflicts injury that cannot be justified by necessity." However, that inquiry necessarily requires a finding that DSC over 15 days causes injury in the first place, let alone injury to the extent that it cannot be justified by necessity, and the DOC does not concede that fact. *See Sterling v. Cupp*, 290 Or 611, 619, 625 P2d 123 (1981) ("[A]rticle I, section 13, itself makes necessity the test of the practice it controls."). Because that question is inevitably fact intensive, and because such fact intensive inquiries necessitate confrontation, it is unsuitable for a facial rule challenge under ORS 183.400.

In addition, petitioner also contends that the DOC rules providing for prolonged DSC violate Article I, section 15, of the Oregon Constitution, which states, "Laws for the punishment of crime shall be founded on these principles: protection of society, personal responsibility, accountability for one's actions and reformation." However, I would decline to address that issue because petitioner does not develop an argument that the challenged rules are an affront to the principles embodied by Article I, section 15, or beyond the scope of DOC's statutory authority. *See, e.g., State v. McNeely*, 330 Or 457, 468, 8 P3d 212, *cert den*, 531 US 1055 (2000) (declining to address constitutional claims asserted but not developed).

Finally, I again acknowledge that the modern understanding of DSC has changed since it was first implemented in Oregon and that there is a growing consensus that the use of DSC is harmful to AICs and not effective at changing behavior or preventing violence. However, other than contending that the secondary sources may be used to "define terms used on the rules *** and the statutes and constitutional sections they violate," petitioners do not develop an argument about why we should accept those findings or studies as otherwise binding on our court and not subject to rebuttal by the DOC. Even if we did accept the studies and the findings they purport to demonstrate, DOC may still have an argument that the DSC it employs does not, as a factual matter, meet the criteria for the DSC as claimed by the studies. As stated above, *whether the policy choices expressed in the rules are good, bad, or indifferent is irrelevant to our task in a facial rule challenge.* Instead, petitioner's claims, to the extent they rely on studies, global resolutions, or other materials extraneous to the rulemaking procedures, may be brought as an "as applied" challenge to the circumstances presented by individual cases and the impact of prison conditions on particular individuals.

Thus, I would conclude that the rules governing disciplinary segregation were adopted in accordance with statutory rulemaking procedures, are consistent with the relevant statutes, and are not an affront to the Oregon Constitution. Accordingly, the rules are valid.

For the foregoing reasons, I respectfully dissent.